Filed Jan. 7, 1892.

------

No. 384.

BUSJAHN v. McLEAN.

PROMISSORY NOTE.—*Alteration.*—*Correction of Mutual Mistake.*—Where a mistake has occurred in the terms of a note, and it is in fact different from the purpose and intention of the parties, and a change is made therein, in good faith, by the holder, for the purpose of making the instrument conform to the intention of the parties, such alteration is not fraudulent, and will not vitiate the note. Under such circumstances the holder is impliedly authorized to make the correction, but it must clearly appear that the mistake was mutual, and extended to all the parties, and the change was only such as was necessary to rectify the mistake and make the instrument speak the exact truth.

From the Cass Circuit Court.

*J. C. McGregor,* for appellant.

*J. C. Nelson* and *Q. A. Myers,* for appellee.

CRUMPACKER, J.—This is an action upon a promissory note, executed by one Dunham, as principal, and Busjahn as surety, to Nathaniel Tilton, and endorsed by him after maturity to McLean.

Dunham suffered judgment by default, but Busjahn appeared and filed a plea of *non est factum,* asserting that the note had been materially altered, after its execution, without his consent.

The cause was tried by the court, and resulted in a judgment for the plaintiff. The only question presented by the appeal relates to the sufficiency of the evidence to support the finding.

It was proved at the trial that Dunham bought a horse of Tilton for $175, and he agreed to give his note for the purchase-price, signed by Busjahn as surety. He had an attorney draw up the note, and he wrote the figures "175.00" in the upper left-hand corner, but by mistake wrote *one hundred and seventy* dollars for the amount in the body of the note. Dunham signed the note, supposing it was for the correct amount, and took it to Busjahn, who also signed it, and then Dunham delivered it to Tilton, and obtained possession of the horse. Tilton shortly afterwards discovered the mistake, and called Dunham's attention to it, and the latter told him to take the note to the man who wrote it and have it corrected. This he did, and the correction was made by inserting the word "five" in the proper place in the body of the note. Busjahn knew nothing about the correction of the mistake until after the maturity of the note. He testified that he knew the note was written for but one hundred and seventy dollars when he signed it, but there was evidence amply sustaining the conclusion that he, as well as the principal, undertook to give a note for the purchase-price of the horse, and that he supposed it was for that amount when he signed it.

Upon this evidence the court held that the change in the note, while without the actual knowledge of the appellant, was made in good faith, and to correct a mistake, and was not a material alteration of the obligation in such a sense as would destroy its validity.

There is no rule of law better settled than that an unauthorized alteration of the terms of a promissory note will vitiate it if material, but this rule pre-supposes the note to represent the actual obligation of the makers. An alteration of the amount of a note is a material alteration.

But the question in this case is, may the holder of a note correct a mistake in the amount, made by all of the parties, and thus make the instrument correspond to the actual engagement?

Busjahn *v.* McLean.

It is conceded such a mistake could be amended in a court of equity against both principal and surety, and the note enforced accordingly. This, we believe, is generally admitted, and it is the most prudent and commendable method of procedure under such circumstances. The identity and integrity of written instruments, which are presumed to contain the deliberate conclusion of the parties, are esteemed very highly in the law, and it is an unsafe undertaking for the payee of a promissory note to assume to change its provisions without the express consent of the makers.

When this is done without authority of some kind fraud will be presumed, and the payee will not be permitted to enforce the collection of the note, nor to sue for the consideration.

But where a mistake has occurred in the terms of a note, and it is in fact different from the purpose and intention of the parties, and a change is made therein, in good faith, by the holder, for the purpose of making the instrument conform to the intention of the parties, such alteration is not fraudulent, and will not vitiate the note. Under such circumstances the holder is impliedly authorized to make the correction, but it must clearly appear that the mistake was mutual, and extended to all the parties, and the change was only such as was necessary to rectify the mistake and make the instrument speak the exact truth.

In *Murray* v. *Graham,* 29 Iowa, 520, it was held that where the payee of a note changed it for the purpose of correcting a mistake, without the knowledge of the makers, it did not amount to a fraudulent alteration, and he could either restore the note to its original condition and enforce its collection, or sue for the consideration.

The case of *Hanson* v. *Crawley,* 41 Ga. 303, was an action upon a promissory note which had been changed by the principal at the suggestion of the payee after its execution, without the knowledge of the surety, by inserting a clause making it payable in gold coin. The surety filed a plea of *non*

*est factum,* relying upon the alteration to release him. The payee claimed that the change was made to correct a mistake and conform the instrument to the agreement of the parties. The court said: "Had the fact been, that the original contract was a specie contract, and the security knew it, and became security with that understanding, the mere fact that, under a mistake of law, they left certain words out of the contract, which were afterwards put in by the principal, would not release the surety."

Substantially the same question was before the court in the case of *McRaven* v. *Crisler,* 53 Miss. 542, and in deciding it the court said : " It was but the correction of a mistake so as to conform the note to the intention of both the parties to it, and it was made in such a manner as clearly to negative any fraud upon the part of the payee, or any intention to obtain an advantage. That under these circumstances alterations in notes will not vitiate them, we think, is well settled."

In *Jessup* v. *Dennison,* 2 Disney, 150, the court uses this language : " If a wrong date be inserted in a note, and it be changed to the true date, as intended by the parties, it will not be considered as a material alteration, or vitiate the note."

In the case of *Boyd* v. *Brotherson,* 10 Wend. 93, the holder of the note corrected the amount, without the knowledge of an accommodation endorser, to correspond to the original agreement. It was held that the correction did not destroy the note, and it could be enforced as corrected.

The same principle controlled the decisions of the courts in the following cases : *Clute* v. *Small,* 17 Wend. 237 ; *Dukes* v. *Franz,* 7 Bush, 273 ; *Hervey* v. *Harvey,* 15 Maine, 357 ; *Ames* v. *Colburn,* 11 Gray, 390 ; *Derby* v. *Thrall,* 44 Vt. 413 ; *Brutt* v. *Picard,* R. & M. 37 ; *Kershaw* v. *Cox,* 3 Esp. 246.

In the case before us the second paragraph of complaint alleged specifically the agreement of the parties and the mistake in the note as originally written, and that it was cor-

rected to conform to the intention of the parties, and judgment was asked for the amount of the note as corrected.

The finding and judgment were practically the equivalent of a judicial reformation of the instrument, and we think in harmony with the principles of justice and the greater weight of authorities.

The note as originally written contained a mistake, and therefore was not the contract of the parties. In its corrected condition it represented their true intention, and we see no reason in law or morals why it could not be enforced as corrected by a court armed with all of the powers of both law and equity.

The judgment is affirmed.

Filed Jan. 6, 1892.