ALBERT H. KEENE *vs.* WEEKS & ALDRICH *et al.*

K. loaned money to a firm for which he took the firm note endorsed by A. Subsequently K. endorsed and delivered the note to W. to pay for shares of stock which he had agreed to purchase. W. delivered the note to D. who transferred to K. stock owned by D. and M. Before transferring the stock D., without the consent of the parties to the note, but without any fraudulent purpose, altered the note by changing the rate of interest to a lower rate than that specified in the note. D. then delivered the note to M. who afterwards redelivered it to K. upon the voluntary rescission by them of the contract for the purchase and sale of the stock. K. brought an action on the note against the firm and the endorser A.

*Held,* that D. was not a stranger to the note as to K., since there was privity in title between them, and that D.'s alteration of the note extinguished the liability of all the parties to it.

*Held,* further, that the redelivery of the note to K. upon the rescission of the contract for the purchase of the stock did not revive the liability of the parties.

*Held,* further, that as the alteration in the note had been made without any fraudulent intent, K. could recover of the firm the debt for which the note was originally given.

ASSUMPSIT. Certified from the Common Pleas Division, jury trial being waived.

*December* 7, 1895. MATTESON, C. J. This is an action of *assumpsit* on a promissory note, dated October 26, 1894, payable to the order of the plaintiff, and made by the partnership of Weeks & Aldrich, composed of John M. Weeks and Arthur M. Aldrich. It is endorsed by the copartners Weeks and Aldrich individually, and by Samuel W. Aldrich, who has deceased during the pendency of the suit. Jury trial was waived in the Common Pleas Division, and the case was thereupon certified to this division for hearing and determination. The defence to the suit is that a material alteration was made in the note after its delivery, consisting in a change in the rate of interest specified in it from 10 per cent. per annum to 6 per cent. per annum.

The note was originally given to the plaintiff by Weeks & Aldrich for a loan to them of a thousand dollars. November 10, 1894, the plaintiff agreed with Weeks to purchase two hundred shares of the capital stock of the National Gas Generator Co., and thereupon endorsed and delivered the note to

Weeks to pay for the stock. The note was taken by Weeks and Aldrich to Daggett, treasurer of the Gas Generator Co., for the purpose of having him issue to the plaintiff, in exchange for it, two hundred shares of the stock of the company, which had not been issued and was denominated treasury stock. Daggett declined to issue the stock because the by-laws of the company did not allow the issue of treasury stock for notes, but suggested that the two hundred shares could be transferred to the plaintiff from stock which had been issued to members of the corporation. In accordance with this suggestion, and with the consent of Weeks & Aldrich, two hundred shares of the stock of the company which had been issued previously to Daggett and Montfort were transferred by them to the plaintiff in exchange for the note. Daggett, before receiving the note, objected to taking it because it bore so high a rate of interest as 10 per cent., and on receiving it, and, as he testifies, though this is denied by Weeks, while Weeks and Aldrich were standing by, and without objection from them, erased the 10 and substituted a 6 in place of it, so that the rate of interest was changed from 10 per cent. to 6 per cent. The note was afterwards turned over by Daggett to Montfort, and was by him redelivered to the plaintiff on the voluntary rescission by Montfort and the plaintiff of the contract for the purchase and sale of the stock when it had been ascertained that the stock was worthless, the plaintiff alleging that he was induced to make the purchase by the fraudulent representations of Weeks concerning the company and its affairs.

The plaintiff does not dispute the proposition that a material alteration of a note by a holder, without the consent of the parties to it, will avoid the note, but he maintains that if the alteration be made by a stranger it will not have that effect; and he further maintains that, in the present case, Daggett, by whom the alteration was made, is to be regarded as to the plaintiff as a stranger.

We do not think that this last claim can be sustained. By the endorsement and delivery of the note by the plaintiff to Weeks, and through him to Daggett, in exchange for the

stock, the title to the note was vested in Daggett, who became the holder and legal owner of it, though to the extent to which Montfort was the owner of the stock transferred to the plaintiff Daggett doubtless held it as a trustee for Montfort.   Having thus the legal title to the note, the change by him in the rate of interest, the change being a material alteration, extinguished the liability of all parties to it who did not consent to the alteration.   When it subsequently passed to Montfort, he took it subject to the infirmity resulting from the alteration, as the successor in title to Daggett; and the plaintiff likewise, on its redelivery to him by Montfort, took it subject to the same infirmity as the successor in title of Montfort.   The voluntary rescission of the contract by Montfort and the plaintiff, for the alleged fraudulent representations of Weeks, could not revivify the liability of parties to the note whose liability had been extinguished by its previous alteration; and as there thus existed between Daggett and the plaintiff the relation of privity in title, there is no ground for holding Daggett to be a stranger as to the plaintiff.

The evidence does not show that Daggett had any fraudulent purpose in changing the rate of interest specified in the note, or that there was any other motive for it than his scruples against receiving what might be regarded as an excessive interest.   The fact that the change was to a lower rate than that specified, and consequently was against his interest as a holder of the note, and to the advantage of the parties liable on it, in the absence of any other fact, rebuts the presumption of a fraudulent intent which otherwise, perhaps, would arise from the alteration.   *Whitmer* v. *Fry*, 10 Mo. 349; *Wheelock* v. *Freeman*, 13 Pick. 165; *Robinson* v. *Reed*, 46 Iowa, 219.

The presumption of a fraudulent intent being rebutted, the plaintiff can recover under the common counts in the declaration the debt for which the note was given, against the parties who received the consideration.   *Booth* v. *Powers*, 56 N. Y. 22, 31; *Clute* v. *Small*, 17 Wend. 238; *Meyer* v. *Huneke*, 55 N. Y. 412, 417; *Hunt* v. *Gray*, 35 N. J. Law, 227, 234; *Matteson* v. *Ellsworth*, 33 Wis. 488; *State Savings*

*Bank* v. *Shaffer*, 9 Neb. 1, 5; 2 Dan. Neg. Instr. §§ 1411, 1413.

There is no claim that Samuel W. Aldrich ever assented to the change in the note or ratified the change after it was made, nor that he received any part of the consideration for which the note was given, and we think, therefore, that there can be no recovery as against his administratrix; but we think the plaintiff is entitled to recover, under the money counts, from Weeks & Aldrich the money which they received.

Judgment may be entered for the administratrix of Samuel W. Aldrich for costs, and judgment for the plaintiff against the defendants Weeks & Aldrich for the amount of the loan to them with interest and costs.

*William R. Tillinghast*, for plaintiff.

*Stephen A. Cooke & Louis L. Angell*, for defendants.