Argued February 6, affirmed February 25, rehearing denied March 25, 1919.

## CATCHING *v.* RUBY.
(178 Pac. 796.)

**Fraud—Purchase-money Note—Deceit in Procuring Execution—Jury Question.**

1. In action by makers of note against payees for damages for recovery of judgment against makers by assignee of note, whether makers' signatures to note were procured by slipping note under contract of warranty, leading makers to believe that contract was being signed, *held* for the jury.

Alteration of Instruments—Fictitious Indorsements—Jury Question.

2. In action by makers of note against payees to recover damages for judgment recovered against makers by assignee of note, on ground that payee had rendered note void by making fictitious indorsements of payments by some of the makers pursuant to secret agreement with such makers, the question of whether such indorsements were genuine credits or fictitious *held* for the jury.

Fraud—Execution of Note—Instruction.

3. In makers' action against payees for damages for judgment recovered against makers by assignee of note, on the ground that signatures to note had been secured by deceit and trickery, an instruction that makers were required to properly rescind transaction upon discovery of fraud, and upon failure to so do affirmed contract, *held* proper under the evidence.

Alteration of Instruments—Purchase-money Note—Material Alterations—Collection of Price.

4. Where purchase-money note is materially altered without fraudulent intent by seller, he may surrender the note and proceed to collect the purchase price.

[As to the effect of an unauthorized alteration of an instrument, see note in 17 Am. St. Rep. 97.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

## Department 1.

This is an action for damages. In brief, the plaintiffs' cause of action, as gleaned from the complaint, is about as follows: Early in the month of May, 1912, the defendant Watson came to the town of North Bend, Washington, with a Percheron stallion belonging to the defendant A. C. Ruby & Company, for whom he was an agent, employed to negotiate a sale of the horse. The price asked for the animal was $3,600, the plan being to organize a company of nine local stock-raisers to buy and keep the animal as a community asset. A sale was eventually accomplished, with the plaintiffs and the defendants Maloney and Moffat as the purchasers, and a note was executed by them in the sum of $3,600, payable to the order of A. C. Ruby & Company. Thereafter, and before its maturity, the note was assigned to M. D. Allen who brought an action thereon in the State of Washington, wherein he re-

covered a judgment for the face of the note, with interest, attorney's fee and costs, which was subsequently paid and satisfied of record. The right to recover in the present action is founded upon fraud and deceit, in two particulars: first, that the plaintiffs did not knowingly sign the note in question, by reason of the fact that Watson tricked them into signing it, by first presenting for their signature a contract of warranty, and then slipping from beneath that document, upon the table, the lower margin of another paper which he assured them was a duplicate of the one to which they had just attached their names. It is also alleged, as the second element of fraud and deceit, that the note was rendered void by a material alteration which had been made without their knowledge, under the following circumstances: That Watson entered into a secret agreement with Maloney and Moffat, to the effect that in consideration of their signing the contract of purchase and the joint and several note, and using their influence to secure the signatures of their neighbors, they should become the owners of shares in the company which was purchasing the horse, without being required to make any payment therefor, and that in pursuance of such agreement, the defendant Watson materially altered the note without the consent or knowledge of the plaintiffs, by making fictitious indorsements thereon, as follows:

"Received payment as follows:
May 18, '12.
Paid by Peter J. Maloney.....................$400.00
Paid by A. J. Moffat.......................$400.00
    ⅓ to apply each payment."

The complaint also contains allegations which appear to be based upon a breach of warranty, but at the commencement of the trial, the plaintiffs expressly

disclaimed any right of recovery thereon, so they are of no interest in the present investigation. The prayer is for a recovery of the amount they were compelled to pay upon the judgment in the former action with reasonable attorneys' fees and costs.

The answer of the defendants Ruby and Watson, after denying the allegations of fraud and deceit, pleads the statute of limitations. There are other affirmative defenses set out, but as they relate to the alleged breach of warranty, they are of no interest here.

A reply having been filed, there was a trial to a jury, resulting in a verdict and judgment for defendants, and plaintiffs appeal.                        AFFIRMED.

For appellants there was a brief over the names of *Messrs. Tucker & Hyland* and *Mr. Ernest W. Hardy,* with oral arguments by *Mr. W. Tucker* and *Mr. Hardy.*

For respondents there was a brief over the names of *Mr. W. W. Dugan, Mr. James N. Davis* and *Mr. Henry S. Westbrook,* with oral arguments by *Mr. Dugan* and *Mr. Westbrook.*

BENSON, J.—The assignments of error present three questions for our consideration. The first is, that the trial court erred in denying plaintiffs' motion for a directed verdict. Upon this proposition it is urged that the uncontradicted evidence establishes plaintiff's right to a judgment in the full amount demanded in the prayer of the complaint.

1, 2. We have read the evidence with care, and we find that some of the plaintiffs admit that they knew that they were signing a joint and several promissory note, and Watson testifies that the promissory note

was the first instrument presented to plaintiffs for signature, and that absolutely no trickery or deceit was used in securing their autographs upon the negotiable instrument. He also testifies that the payments indorsed upon the note were not fictitious, but were legitimate credits. Regarding the payment credited to Maloney, he says that he kept the horse at Maloney's livery-stable, hired livery rigs from him, thereby incurring a debt of $120, which constituted a part of the credit; that Maloney went with him, day after day, upon his trips through the community in his efforts to effect the sale, for which he agreed to pay him $200, and that Maloney paid him the remaining $80 in cash. Referring to the Moffat credit, he testifies that he found Moffat to be a prominent and influential stock-raiser in the community, and being otherwise unable to secure his co-operation in effecting the sale, he agreed to pay him for his services, by giving him a $400 interest in the horse; that this was a necessary overhead expense in making a sale. This testimony was properly submitted to the jury, since it was their task to determine whether the indorsements were genuine credits or fictitious. The motion for a directed verdict was properly denied.

It is next urged that the court erred in giving to the jury the instruction numbered 14. This part of the charge gives to the jury a statement of the law in regard to election of remedies in case a party has been fraudulently induced to make a contract, and his duty to act promptly upon discovery of the fraud if he wishes to rescind. The instruction concludes thus:

"Any delay on his part, especially in remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract, and if you find, from the evidence in this case, that the plain-

tiffs knew, prior to the death of the horse, that said note had been signed, and there was information or knowledge came to defendants that said note was in existence, then and in that event remaining in possession of said horse would be an affirmance of said contract, and should be taken into consideration by you in determining this case.''

3. This instruction clearly relates to the cause of action based upon the alleged trickery and deceit in securing the signatures of the plaintiffs to the note. There is evidence tending to show that the purchasers of the horse had a meeting two days after that transaction, when a copy of the note was exhibited by Maloney, and there was some discussion, some of them then denying that they had signed it. Maloney, Catching, Moffat and McClellan testify that they knew it was a note when they signed it. Watson says that the note was the first paper signed by any of them. The note is dated May 18, 1912, and the horse died on July 1, 1912. There is no record of any action taken by any of the plaintiffs toward repudiating the transaction until they filed their answers, in the action on the note, in King County, Washington, which was done in September, 1914. Moffat, in that proceeding answered separately and denied the execution of the note, and all of the present plaintiffs and Moffat joined in another answer in which the execution of the note was specifically alleged. With this evidence in the record it was proper for the court to advise the jury as to the remedies available to a party who has been tricked into executing a contract, and to advise them that if the plaintiffs, knowing of the fraud, had neglected to take advantage of an obvious remedy, this should be considered by the jury, since it would have a perfectly logical influence in determining the good faith of their

present attitude. There was no error in giving the instruction.

Finally, plaintiffs urge that there was error upon the part of the trial court in giving the following instruction to the jury:

"If you find the indorsement upon the back of the note constituted an alteration, under the instructions given you, then you are instructed that before defendants could avoid the payment of the note, or the amount therein specified, it must have been done with a fraudulent and deceitful intent, and if you find it was placed upon said note for services rendered, or cash paid, in any sum or amount whatsoever, in good faith, by defendant Watson, then and in that event plaintiffs cannot recover, and your verdict should be for the defendants."

In considering this statement of the law, it is to be remembered that this is not an action upon the note, but a proceeding to recover the damages suffered by being compelled to pay the amount of the note. It is not denied that the note evidences a valid indebtedness, and that plaintiffs actually purchased the horse, which was duly delivered to them, and that they promised to pay for him. In *Wallace* v. *Tice,* 32 Or. 283 (51 Pac. 733), this court says:

"We think the following deduction is within the cases: That where the alteration is prompted by honest and pure motives, with the purpose of correcting the instrument to correspond with what the party honestly and in perfect good faith believed to be the true engagement of the parties at the time of the execution, the act does not destroy the legal efficacy of the note, and recovery may be had upon it when restored."

That was a suit in equity to restore the original conditions of a promissory note and to recover upon it. The date of its execution had been changed, and while the court held this to be a material alteration, it

was also held that it had the power to restore the original date and decree its payment. In *Savage* v. *Savage,* 36 Or. 268 (59 Pac. 461), the note had been altered by changing the rate of interest provided therein. The plaintiffs insisted that they were not suing upon the note but upon the original debt, of which the negotiable paper was but an evidence. In the course of the opinion this court quotes and adopts the language used by the court in *Booth* v. *Powers,* 56 N. Y. 22, as follows:

"If a note be altered in a material part, without authority, after execution, that avoids the note. It is not of moment whether it be done with fraudulent intent, save as the existence of such intention affects the right to resort to the original indebtedness; and then the fact of the unauthorized material alteration is a matter for the consideration of the jury in determining the question of fraudulent intention. * * If the alteration was made without fraudulent intention, the payee may resort to the original indebtedness, if that was independent of the note, and has not been discharged by the execution of it, and pursue the maker upon that."

4. It follows, in the case at bar, that Ruby & Company might have surrendered the note in question, and proceeded to collect the purchase price of the horse, even though the indorsement of payments upon the back constituted a material alteration, if such alteration were free from fraudulent intent, and therefore, if the payment of the debt could have been enforced against plaintiffs, they have not been damaged, and the instruction of which complaint is made, was proper.

We find no error in the record and the judgment is affirmed.    AFFIRMED.    REHEARING DENIED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.