## BORN *v.* LAFAYETTE AUTO COMPANY.

[No. 23,344. Filed December 19, 1924. Rehearing denied July 3, 1925.]

1. NEW TRIAL.—*Decision for plaintiff supported by all reasonable inferences from evidence favorable to him.*—As against a motion for a new trial on the ground that the decision is not supported by the evidence, the decision is supported by all inferences favorable to the judgment plaintiff, and no presumptions can be indulged in favor of the defendant. p. 402.

2. APPEAL.—*Weight of conflicting evidence exclusively for trial court, and appellate tribunal must accept as true all that supports the decision.*—The weight of conflicting evidence is exclusively for the trial court, and an appellate tribunal must accept as true all that tends to sustain the decision and reject any testimony in conflict with the decision, as not having been believed by the court. p. 405.

3. BILLS AND NOTES.—*Evidence held sufficient to sustain finding that note was not given in payment of debt.*—Evidence *held* sufficient to sustain a finding that note, in renewal of which the note sued on was given, was not given or accepted in payment but only as evidence of a debt to be paid at maturity thereof. p. 405.

4. ALTERATION OF INSTRUMENTS.—*Unauthorized alteration of negotiable instrument by payee without maker's knowledge avoids it.*—Under the provisions of §§125, 126 of the Negotiable Instruments Act (§§11458, 11459 Burns 1926, §§9089u3, 9089u4 Burns 1914, Acts 1913 p. 120), the unauthorized alteration of a note by the payee without the knowledge of the maker avoids it, though alteration made for the purpose of making it conform to the contract actually entered into, and without fraudulent intent. p. 405.

5. BILLS AND NOTES.—*Negotiable instrument imports a consideration.*—A promissory note that constitutes a negotiable instrument imports a consideration. p. 405.

6. ALTERATION OF INSTRUMENTS.—*Debt for which negotiable instrument given not discharged by alteration of instrument without fraudulent intent, and holder may recover thereon.*—

The alteration of a negotiable instrument given for a debt which was not extinguished by its execution does not satisfy or discharge the debt, when made without fraudulent intent, and the holder of the instrument may recover on the original debt.   p. 405.

7.   BILLS AND NOTES.—*Moral obligation to pay debt not collectible sufficient consideration for note for amount of debt.*—The moral obligation to pay a debt which is not collectible because of a rule of law, such as a statute of limitation, adjudication in bankruptcy, debtor's disability, or termination of indorser's liability through holder's failure to sue maker, is sufficient consideration for a note for the amount of the debt.   p. 410.

8.   BILLS AND NOTES.—*Obligation to pay for automobile purchased by maker of note would be sufficient consideration for a note given in renewal of original note avoided by alteration without fraudulent intent.*—The legal and moral obligation to pay for an automobile purchased by the maker of a note executed for the purchase price would be a sufficient consideration for a renewal note given in place of the original note which had been avoided by an alteration made without fraud, in good faith, in an attempt to make the note express the contract entered into at the time of the purchase.   p. 410.

From Montgomery Circuit Court; *Jere West,* Judge.

Action by the Lafayette Auto Company against Edward Born.   From a judgment for plaintiff, the defendant appeals.   (Transferred from Appellate Court under §1357 Burns 1926, §1394 Burns 1914.)   *Affirmed.*

*Crane & McCabe, George P. Haywood* and *F. G. Davidson,* for appellant.

*C. V. McAdams* and *Clyde H. Jones,* for appellee.

EWBANK, J.—The principal question presented for decision is whether or not the maker of a note, executed in renewal of a prior note which he had given as evidencing his debt for the price of personal property sold to him, can defeat an action on the renewal note by pleading and testifying that it was given without consideration, because the original for which it was exchanged was altered without his consent after its execution and before its renewal, where it appears that

the alteration merely made the note express the real contract of the parties, and was made without any intention to defraud, and the maker of the note still keeps possession and retains the ownership of the property for which the original note was given, and makes no offer to return it. The note sued on was not altered. The only defenses set up were a general plea that it was given without consideration, and a special plea that the only consideration for it was a prior note which had been materially altered by the payee after its execution, without the maker's consent. There was a reply of denial, and one confessing the alleged alteration, but alleging that, by mutual mistake of the parties, the original note did not express the contract entered into and that the alterations were made only to correct errors inadvertently made in writing that note, and that, as so altered, the original note expressed the contract and agreement actually entered into by the parties; that said original note was written on a printed blank which recited that the money was payable with "eight" per cent. interest after "maturity," and that the alteration made it read "six" per cent. after "date," which was what the parties had actually agreed upon; that after the date when such note was made payable, the payee, at the request of the maker, agreed to accept a renewal note from him payable in thirty days, and, pursuant to such agreement, the maker executed the note sued on for the amount of the original note, plus interest thereon at six per cent. from date to the time the renewal note was executed; that, at the time the renewal note was executed, the defendant had full knowledge and notice that the note he was so executing was to renew the note agreed to have been made at the time of the sale, with interest from date, and knew that the note being surrendered to him provided for interest from date at

six per cent., and knew that, by such renewal, he was paying interest at that rate, whereby he ratified and confirmed the change and alteration of such note. There was no answer of fraud or that the defendant had rescinded. or attempted to rescind the contract of sale.

The trial court made a general finding in favor of the plaintiff, and rendered judgment against the defendant for the full amount of the renewal note, principal and interest, together with attorney fees. All the issues joined were thereby decided in favor of the plaintiff. Defendant filed his motion for a new trial for the reason, among others, that the decision is not sustained by sufficient evidence. As against an attack on that ground, the decision is supported by all inferences favorable to the plaintiff that reasonably may be drawn from the facts proved, and no presumptions can be indulged in favor of the defendant, who had the burden of proof to establish that there was no consideration. And the evidence falls short of conclusive proof that there was no consideration for the note sued on. There was evidence that the defendant bought from the plaintiff a Chalmer's automobile for the agreed price of $1,600; that he told plaintiff the money to pay for it must come out of an estate then in process of settlement; that it was agreed that the car would be sold on four months' time; that a note was then drawn up and defendant signed it, and it was again said that he was to have four months time; that the understanding was that defendant's brother was to pay the $1,600; that defendant paid no money but signed and gave to plaintiff his note for that amount, payable in four months; that the note was written on a printed blank which recited that it was payable "with interest from maturity until paid, at the rate of eight per cent. per annum"; that in selling the car the salesman told defendant that he could buy it at

Born *v.* Lafayette Auto Co.—196 Ind. 399.

four months at six per cent. from date, and he said "all right," and that, in defendant's presence, the salesman told the secretary of the plaintiff company that defendant had bought the car and was giving $1,600 for it, and wanted four months and six per cent. from date, and for him to draw a note at six per cent. interest; that the secretary then wrote the original note on a blank form, and defendant signed it; that the secretary did not read the printed part of the note; that the bookkeeper was then absent on her vacation, and, after she came back, she drew a line through the words "maturity" and "eight" and wrote in the words "date" and "six" without defendant's knowledge; that the car was sold to defendant and thereafter he so stated in writing over his signature; that he alone signed each note; that after the original note came due, defendant was visited three times by representatives of the plaintiff company who asked him to pay it, and each time he said he would pay it soon; that the third time, he was asked to pay the original note, after it had matured, he said if they would give him thirty days longer, he would pay it, and offered to give a new note for it, and told the collector to add the interest on the note to the new note; that the collector did nothing at that time except to ask for payment and to tell him that, unless it was paid, plaintiff would have to sue; that the collector then had the note with him and did not know it had been changed after it was executed; that he then went to the bank, and the banker figured up the interest on the back of the original note for 209 days, his figures showing an addition of the days of the months, beginning with August, to and including February 25, on which date the renewal note was given; that only eighty-seven days after the expiration of four months from its date had then elapsed; that the general manager of the plaintiff company took the old note and the new one to defend-

ant's office and handed to defendant the note sued on; that he signed it and the general manager then handed him the old one, and appellant kept the old note in his office, under his control, for nearly two months, and until after this action on the renewal note was commenced, on April 3, 1915; that appellant was forty-three years old, with good sight, could read and write, had been engaged in the ice, coal and grain business all his life, and was president of a company engaged in that business, and had previously given and taken notes; that the renewal note was for $1,655.23. and that said amount in figures was written in the upper right hand corner; that the interest at eight per cent. after maturity would have been $26.58; that the renewal note read "with interest from date at the rate of six per cent. per annum"; that the alteration of the original note was made without any other intention except to make the note speak the contract as agreed upon; plaintiff's general manager thought he had the right to change the note to what the contract really was, and that it was an honest transaction on his part; he was a mechanic and knew little about notes; that after executing the original note, defendant drove away in the purchased automobile, and afterwards drove it to Indianapolis, and left it in the possession of his brother, who still had it when this suit was begun nearly a year later. There was no evidence that the defendant ever returned or offered to return it to the seller, nor what he or his brother did with it. The defendant testified that he knew the original note, as drawn, provided for eight per cent. interest after maturity. The trial court could have drawn an inference that he knew the note was so corrected with a pen as to read with interest "from date at the rate of six per cent.," instead of "from maturity at the rate of eight per cent.," from the fact that he executed a renewal note covering interest for 209

days, in the sum of $55.73, as figured on the back of the old note, and kept the old note in his possession some months afterward and until he was sued, without objection to its validity or to the amount, whereas only eighty-seven days had elapsed after the first note matured when the renewal note was given, and the interest for that time at eight per cent. would be only $26.58.

There was much testimony disputing the evidence as above recited, but the weight of conflicting evidence was 2, 3. exclusively for the trial court, and this court is bound to accept as true what tends to sustain the decision, and to reject any testimony in conflict with it, as not having been believed by that court. The evidence above set out is sufficient to sustain a finding that the original note was not given and accepted as payment, but only as evidence of a debt which was to be paid at the end of four months. And so far as is necessary to uphold the decision appealed from, the trial court must be deemed so to have found.

The "Act relating to Negotiable Instruments" was in force when both the notes were executed, and when the 4-6. alteration of the first one was made. That act contains provisions as follows: "Sec. 24. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. * * * Sec. 25. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time. Sec. 28. Absence or failure of consideration is a matter of defense as against any person not a holder in due course. * * * Sec. 124. Where a negotiable instrument is materially altered without the assent of all parties liable thereon it is avoided, except against a party who has himself made, authorized or assented to the alteration and subsequent indorsers. Sec. 125. Any

alteration which changes ＊ ＊ ＊ the sum payable, either for principal or interest, ＊ ＊ ＊ or any other change or addition which alters the effect of the instrument in any respect, is a material alteration." Acts 1913 pp. 120, 125, 126, 140, §§24, 25, 28, 124, 125; §§11383, 11384, 11387, 11483, 11484 Burns 1926, §§9089x, 9089y, 9089b1, 9089t4, 9089u4 Burns 1914.

Under this statute, the unauthorized alteration of the original note by the payee without the knowledge of the maker was sufficient to avoid it, even though the alteration only made it express the contract actually entered into, and was made without fraudulent intent, in the honest belief that the party making such alteration had the right to change it. After being so altered without the maker's consent, it was no longer the instrument issued by the maker, and could no longer pass from hand to hand freed from all equities as between the original parties after the manner of a negotiable instrument. But the note sued on was never altered. That note was itself *prima facie* evidence that it was given for a sufficient consideration. The maker of that note had the possession and ownership of an automobile for which he had given nothing at all except the original note which was altered, and which was taken up by executing the note sued on. It is an established rule of law that where a negotiable instrument given for a debt which was not extinguished by its execution is avoided by an alteration made without fraudulent intent, the debt is not thereby satisfied or discharged, but that the holder of the instrument may recover on the original debt as if no note had been taken for it. "The general rule seems firmly established that in the absence of fraud the instrument only, and not the original debt is destroyed." 2 Cyc 183; 2 C. J. 1181, 1182, citing many authorities.

"The presumption of a fraudulent intent being rebut-

ted, the plaintiff can recover under the common counts in the declaration the debt for which the note was given, as against the parties who received the consideration." *Keene* v. *Weeks* (1895), 19 R. I. 309, 33 Atl. 446, citing authorities.

"If however, the alteration of the instrument was without fraudulent intent, while the instrument itself is invalidated thereby, yet it is well settled that the right to recover on the original consideration remains. Although the identity of the instrument may be destroyed, it will not operate to cancel the debt of which the instrument is merely evidence." 1 R. C. L. p. 1006, §36.

"In determining whether an instrument is avoided by a material alteration, the intent or motive of the party can have but little play. In the consideration, however, of the effect of such an alteration upon the original debt for which the instrument was given the motives which prompted the change are of the greatest moment. If the alteration was fraudulent, it reaches not only the instrument, but the original consideration as well, and prevents a recovery upon either (citing authorities). * * * Where, however, the alteration was made without fraudulent intent, but in the correction of a mistake, etc., the reason for such a rule ceases, and it is well settled that such alteration does not preclude the party from recovering on the original consideration." 86 Am. St. 122, citing many authorities. *Edington* v. *McLeod* (1912), 87 Kans. 426, 124 Pac. 163, 41 L. R. A. (N. S.) 230, and note; Ann. Cas. 1913E 315, and note.

"If a note be altered in a material part, without authority, after execution, that avoids the note. * * * If the alteration was made without fraudulent intention, the payee may resort to the original indebtedness, if that was independent of the note, and has not been discharged by the execution of it, and pursue the maker

upon that." *Cotching* v. *Ruby* (1919), 91 Ore. 506, 513, 178 Pac. 796, 798; *Savage* v. *Savage* (1899), 36 Ore. 268, 59 Pac. 461; *Booth* v. *Powers* (1874), 56 N. Y. 22.

"The authorities sustain the proposition that where the change has been made with the honest purpose to make the instrument conform to the agreement of the parties, the instrument will be destroyed by the alteration, if material, but the party making the change will be permitted to recover upon the original consideration for which the note was given." *Otto* v. *Halff & Bro.* (1896), 89 Texas 384, 34 S. W. 910, 59 Am. St. 56; *Forrest* v. *Tobin* (1920), 226 S. W. (Tex. Civ. App.) 466.

"Thus, if a holder of a promissory note makes a material alteration in it after its execution but without any design to defraud, and in the belief that he has a right to alter it in order to make it conform to the original agreement of the parties, such alteration does not deprive the holder of the right to elect to disregard the note and sue on the original obligation, provided the note was not accepted as payment thereof." *Colum-bia Grocery Co.* v. *Marshall* (1914), 131 Tenn. 270, 278, 174 S. W. 1108, citing many authorities.

"To enable the appellants to defeat both the altered note and the right to recover on the original consideration, it devolves upon them to allege in their pleading and prove that such alteration was made for a fraudulent purpose. Neither did the answer allege this fraudulent purpose, nor did the proof attempt in the slightest degree to tend to prove fraud." *Bank* v. *Walton* (1915), 187 Mo. App. 621, 624, 173 S. W. 56; *Ramsey* v. *Utica Deposit Bank* (1913), 156 Ky. 263, 160 S. W. 943.

"We think a fair review and analysis of the evidence demonstrates that the change in the note, which we have been discussing, was neither covinous nor fraudu-

lent, but was made with the honest purpose to make it conform to the real agreement of the parties and that such alteration should not therefore discharge Baldwin from all liability. This was the rule laid down * * * in *Otto* v. *Halff & Bro.,* 89 Texas 384. The argument of the court there seems to us, not only unanswerable, but so effectually to settle the question that further discussion or citation of authority is unnecessary." *Baldwin* v. *Haskell National Bank* (1911), 104 Texas 122, 126, 133 S. W. 864.

In the case of *Catching* v. *Ruby, supra,* as in the case at bar, the action was brought by the makers against the payee in the courts of Oregon, to recover back money which they had been compelled to pay to an assignee of the note, who recovered judgment thereon against them in the courts of another state. It was alleged as an element of damages that the note was rendered void by a material alteration made by an agent of the payee without the maker's knowledge. The trial court gave an instruction that if the indorsement on the note relied on as an alteration was placed there in good faith, for an honest purpose, the plaintiffs could not recover. After stating the rule of law as declared by the authorities cited above, the Supreme Court of Oregon said: "It follows that * * * (the defendants) might have surrendered the note in question, and proceeded to collect the purchase price of the horse, even though the indorsement of payments upon the back constituted a material alteration, if such alteration were free from fraudulent intent, and therefore, if the payment of the debt could have been enforced against plaintiffs, they have not been damaged, and that instruction was proper."

Likewise, in the case at bar, if the alteration of the original note made it express the real contract of the parties, and was made without a fraudulent purpose,

in the honest belief that the party making it had the right to do so, as appellee alleged and its witnesses testified, and as the court found by its decision in appellee's favor, then appellant's purchase of the automobile for which he had not paid anything at all, was a sufficient consideration for the execution of the renewal note.

Where a person honestly owes a debt, but it is not collectible by law because of the operation of some rule of law taking away the remedy for its collection, 7. the moral obligation to pay his debt is a sufficient consideration for the execution of a note to secure it. Thus, a debt barred by the statute of limitation is a sufficient consideration for a note for the amount of the debt. *Olvey* v. *Jackson* (1886), 106 Ind. 286, 4 N. E. 149; 17 R. C. L. p. 890, §249. And a debt barred by an adjudication in bankruptcy will support a note given for the amount of such debt. *Carey* v. *Hess* (1887), 112 Ind. 398, 14 N. E. 235; *Willis* v. *Cushman* (1888), 115 Ind. 100, 105, 17 N. E. 168. And a debt incurred during minority upon a sufficient consideration will support a written promise to pay it made after becoming of age. *Heady* v. *Boden* (1891), 4 Ind. App. 475, 476, 30 N. E. 1119. A promise to pay a note by one who assigned it for value by indorsement, made after his liability as indorser had terminated through failure of the holder to sue the maker, is founded upon a sufficient consideration. *Mardis* v. *Tyler* (1850), 10 B. Mon. (Ky.) 382.

The appellant having agreed to pay $1,600 for an automobile which he and his grantee continued to own, possess and use, not having paid any part of the 8. price, did not cease to be indebted by reason of the note which he gave for it being avoided by an alteration, made without fraud, in good faith, in an attempt to make the note express the contract really entered into; and the legal as well as moral obligation

Born *v.* Lafayette Auto Co.—196 Ind. 399.

to pay such debt for the car, notwithstanding the destruction of the original note by its alteration, might be a sufficient consideration for the renewal note. The trial court having found that there was a sufficient consideration for such renewal note, its finding should not be set aside for insufficiency of the evidence where there was evidence such as we have set out above.

The judgment is affirmed.

Travis, C. J., dissents with. an opinion.

### DISSENTING OPINION.

TRAVIS, C. J. (dissenting).—This is a suit on a promissory note which bore interest at six per cent. per annum from date, due thirty days after date, and was in renewal of a note that had been altered by the payee. The questions involved relate to §§124 and 125 of the Uniform Negotiable Instruments Act, Acts 1913 p. 120, §§11483, 11484 Burns 1926, §§9089t4, 9089u4 Burns 1914; and also the question of consideration. The pleadings were: (a) An ordinary complaint on a note past due for principal, interest, and attorneys' fees; (b) an answer of general denial, and two special answers: (1) Want of consideration; and (2) alleging that the note sued on was in renewal of a note which was materially altered by the payee, by changing the rate of interest, which alteration was made without the assent of the party liable thereon; (c) a reply in: (1) General denial to all answers; and (2) confession of the alteration of the prior note and an avoidance under the allegation that the alterations were made to conform with the intentions of the parties at the time said prior note was executed, to the third paragraph of answer.

The case was tried by the court without the intervention of a jury, which resulted in a general finding for the plaintiff (appellee herein), and a judgment. Appellant's appeal is based upon a motion for a new trial,

because:    (1) The decision of the court is not sustained by sufficient evidence; (2) is contrary to law; and (3) (4) and (5) on account of the admission in evidence of certain exhibits.

To make the case as clear as possible, the statement of the facts is divided into those which are undisputed and those which are disputed.    The undisputed facts necessary for an understanding of the case are: appellant gave his promissory note based upon a good consideration, to the appellee as payee, "with interest from maturity until paid, at the rate of eight per cent. per annum," due four months after date.    After the note was executed appellee (payee) altered the note by marking out the word "maturity," and writing the word "date" above the word "maturity," and by marking out the word "eight" and writing the word "six" above the word "eight," which made the note read, "with interest from Date until paid at the rate of six per cent. per annum."    Six months and twenty-five days after the execution of the first note, appellee made several demands for payment upon appellant at appellant's office, in reply to which appellant said he could not pay the note, and asked for an extension of thirty days time, at the end of which he said he would be able to pay the note.    At the times the several demands were made, the note was not presented or shown to the appellant maker by the appellee payee; neither did appellee payee bring with it the note from its office to the appellant maker at his office.    After appellant had asked for extension of time, appellee inquired if he would be able to pay the accrued interest, to which appellant replied that he wanted an extension of the full amount, principal and accrued interest.    Appellee departed, and within a half hour, returned to appellant's office, and presented to him a new promissory note, and informed appellant that this note was a note in renewal of the

other note, and presented it to appellant for his signature, which was immediately signed and handed back to appellee by appellant. Thereupon appellee handed to appellant the old note, which was by him immediately handed to his bookkeeper with instructions to place it in his safe, which was done, and thereupon appellee departed. Appellee at none of the visits by it in demand of payment, or in presenting the renewal note, acquainted appellant with the fact that it had altered the promissory note for which the note in suit was given in renewal, without his assent. Suit was begun upon the renewal note after its maturity. The facts in dispute are on the part of the appellee: that before the original note was given, it was understood and agreed between the maker and payee that it was to bear interest at the rate of six per cent. per annum from date, but through inadvertance in preparing the note appellee failed to mark out the printed word "maturity" and the printed word "eight" in the note, and insert therein the words "date" and "six" respectively. Appellant's evidence says that the original note as executed was according to the original agreement, and that he at no time agreed that the note should bear interest from date at six per cent. per annum.

The materialness and legal effect of an alteration of a promissory note under §125, Uniform Negotiable Instruments Act, are purely questions of law, for the court. Whether there be an alteration, the manner of making it, the time at which it was made, by whom it was made, with what authority, are questions of fact. 2 Parsons, Bills and Notes 576. As to the questions of fact, there is not much doubt, because, based upon appellee's reply, the alteration is admitted, and by the evidence, the time at which the alteration was made and the manner of doing it, by whom it was made, and that it was made without the authority or assent of the

maker. There being an admitted and proved altera-
tion, §125, Uniform Negotiable Instruments Act, decides
the question by saying, "any alteration which changes:
* * *   the sum payable, either for principal or inter-
est; is a material alteration," and inasmuch as such
material alteration was made without the assent of the
party liable thereon, the court is unquestionably gov-
erned by §124, Uniform Negotiable Instruments Act,
which makes the rule that "where a negotiable instru-
ment is materially altered without the assent of all par-
ties liable thereon, it is avoided." The conclusion must
unequivocally be that this note was avoided.

A material alteration of a promissory note avoids
the instrument, because, as altered, it no longer repre-
sents the agreement between the parties. *Wood* v.
*Steele* (1867), 6 Wall. 80, 18 L. Ed. 725; *Angle* v. *North-
western, etc., Ins. Co.* (1875), 92 U. S. 330, 23 L. Ed.
556; *Mersman* v. *Werges* (1884), 112 U. S. 139, 5 Sup.
Ct. 65, 28 L. Ed. 641; *Greenfield Savings Bank* v.
*Stowell* (1876), 123 Mass. 196, 25 Am. Rep. 67; *John-
son, Rec.,* v. *May* (1881), 76 Ind. 293; *Coburn* v. *Webb*
(1877), 56 Ind. 96, 26 Am. Rep. 15; *Cochran* v.
*Nebuchar* (1874), 48 Ind. 459, 462.

The effect of a material alteration of a negotiable
note, under §125, does not involve fraud, for it is im-
material whether the intent with which the alteration
was made, was fraudulent or not. *Booth* v. *Powers*
(1874), 56 N. Y. 22; *Evans* v. *Foreman* (1875), 60
Mo. 449; *Heath* v. *Blake* (1887), 28 S. C. 406, 5 S. E.
842; *Edington* v. *McLeod* (1912), 87 Kans. 426, 124
Pac. 163, 41 L. R. A. (N. S.) 230, Ann. Cas. 1913E 315.

The State of Kansas enacted the Uniform Negotiable
Instruments Act in 1905. In 1912 the Supreme Court
of that state held that a promissory note altered by the
payee by increasing the rate of interest, without fraud-
ulent intent, to make it conform to the contract in pur-

suance of which it was given, is avoided. *Edington v. McLeod, supra.*

It is therefore the conclusion of the writer that the confessed alteration of the original note without the assent of the party to be bound thereby, was a material alteration in that it changed the tenor of the note, and that the note was thereby avoided.

It is to be settled whether the new note—the renewal note—the note in suit—is so connected with, so contaminated by, the altered note for which it was given in renewal, that it is without consideration. Appellee does not contend that the note in suit was given for the precedent debt upon which the altered note, as it existed before alteration, was given, and independent of the altered note, and even though it were contended that the note in suit was based upon the precedent debt, the agreement concerning the interest on the debt was and is in dispute. It has been noted as one of the disputed facts, contended for by the payee, that the note was altered by changing the tenor thereof concerning interest, to make it conform to the agreement upon which the note was to be based. The consensus of the holdings of the courts of the several states was, prior to the enactment of the Uniform Negotiable Instruments Act, that the payee might do no such thing; that the maker of a note understood that it was to carry certain interest does not authorize the insertion in the instrument after its execution, without his knowledge, of a clause expressing that fact. *Merritt* v. *Dewey* (1905), 218 Ill. 599, 75 N. E. 1066, 2 L. R. A. (N. S.) 217, 41 Am. L. Reg. (N. S.) 437, 499, 561; Brannon, Negotiable Instruments Law (3d ed.) p. 533; *Murray* v. *Graham* (1870), 29 Iowa 520; *Jeffrey* v. *Rosenfeld* (1901), 179 Mass. 506, 61 N. E. 49; *Myers* v. *Huneke* (1874), 55 N. Y. 412.

The opinion in the case first cited was rendered two

years prior to the enactment of the Uniform Negotiable Instruments Act by the State of Illinois. In contrast to the above case as to time, and in support of its opinion, the same court held in 1920, that a material alteration of a negotiable instrument by a party to it, even though it reduced the amount, without the consent of the maker, rendered the instrument void; and that it could not be enforced, even by a subsequent purchaser in good faith without notice, whether the alteration was injurious or beneficial to the party liable. *Keller* v. *Rock Island State Bank* (1920), 292 Ill. 553, 127 N. E. 94, 9 A. L. R. 1082; *Johnston, Rec.,* v. *May* (1881), 76 Ind. 293.

It is the opinion of the writer that the evidence proves that the note in suit was given in renewal of the altered note. There is no inference that can be drawn from the evidence that the note in suit was based upon any other foundation or consideration. In the case at bar the note in suit was not given in renewal of the original note, which was a binding obligation, but it was given in renewal of the altered note, which alteration was material and avoided it; and which altered note was not a binding obligation. Mr. Daniel, in his work on Negotiable Instruments (6th ed.) §205, says, "When the first note was without consideration a renewal note is also." *Cochran* v. *Perkins* (1906), 146 Ala. 689, 40 So. 351; *Earle* v. *Robinson* (1895), 36 N. Y. Supp. 178, 91 Hun 363.

Mr. Joyce, in his recent work on Defenses to Commercial Paper, §222, says, "A note given in renewal for a note avoidable for want of consideration is without consideration." *Cochran* v. *Perkins, supra; Gilbert* v. *Brown* (1906), 123 Ky. 703, 97 S. W. 40, 7 L. R. A. (N. S.) 1053; *Hill* v. *Buckminster* (1827), 22 Mass. (5 Pick.) 391.

The taint which attaches to a negotiable note is in-

corporated into its renewal note. In other words, a promissory note is not purged of its taint by mere renewal thereof without changing or restoring the contract in the renewal note so that the taint carried into it is utterly removed. *Clark* v. *Sisson* (1855), 4 Duer (N. Y.) 408; *Macungie Savings Bank* v. *Hottenstein* (1879), 89 Pa. St. 328; *Denick* v. *Hubbard* (1882), 27 Hun (N. Y.) 347; Joyce, Defense to Commercial Paper §305.

We are not without authority in the decisions of this court upon the question of consideration of a renewal note. *Bray* v. *Pearsoll* (1859), 12 Ind. 334. The altered note was without consideration. In the light of the judicial opinions that a material alteration of a promissory note avoids it, even though the act in so doing was not tinged with fraud, it follows that the party to the note in so doing an unlawful act, committed a wrong. It is the law, that presumptions between a wrong doer and a person wronged, should be made in favor of the latter. *Costigan* v. *Mohawk, etc., R. Co.* (1846), 2 Denio (N. Y.) 609, 43 Am. Dec. 758; *Jackson* v. *Miller* (1830), 6 Wend. (N. Y.) 228, 21 Am. Dec. 316; *Snyder* v. *Riley* (1847), 6 Pa. St. 164, 47 Am. Dec. 452. The sum of money named as principal in the renewal note was the amount of the principal of the original note before alteration and after alteration, plus interest computed upon the terms stated in the altered note, which was "from date until paid at the rate of six per cent. per annum," which aggregate principal of the renewal note was larger than it would have been had the sum named in the renewal note as principal been for the principal named in the original note plus the interest computed upon the terms named in the original note, which terms are "interest from maturity until paid at the rate of eight per cent. per annum."

Following the trend of the decisions of various courts I am compelled to hold that the act of the appellee in materially altering the note in question not only avoided it, but that such act thereby vitiates every act following and based thereon; especially, on account of the fact that the appellee had opportunity, time after time, to acquaint the maker with his act, but withheld such information, to which in all good conscience the maker was entitled to know at the hand of the payee.

One other excuse is presented. It is maintained by appellee, in support of the action, in altering the note, and of the validity of the renewal note, that the maker, by his act in renewal, ratified the act of the alteration, and that the renewal note becomes legal thereby. What would have been the situation, if the maker of the note which was altered, under this same statement of facts on which this case is predicated, up to the time the appellant signed the renewal note, had paid appellee the exact amount of principal and accrued interest represented by the altered note, in cash, and appellee thereupon surrendered the altered note to appellant, without any explanation whatever, that the note appellant was paying, was an altered note not assented to by him? This very situation has been passed upon by several courts. Where money has been paid on an altered instrument without the knowledge of the party to be bound by such alteration, the general principles applicable in cases where money is paid under a mistake of fact govern, and such money may ordinarily be recovered back. *National Bank of Commerce* v. *National Mechanics Banking Association* (1873), 55 N. Y. 211, 14 Am. Rep. 232; *Fraker* v. *Little, Rec.* (1880), 24 Kans. 598, 36 Am. Rep. 362.

The Negotiable Instruments Law was agreed upon for recommendation to the legislatures of the states by the National Conference of the State Boards and Commis-

sioners for promoting the Uniformity of Legislation in the United States, at its meeting in August, 1896, since which time forty-six states have adopted the same, a few of which have made some very slight alterations in the law as drafted and agreed upon by the commissioners. This law was enacted by the legislature of this state in 1913; and, according to the information of the text writers, is an exact copy of the Uniform Negotiable Instruments Law as prepared by the commissioners, except a slight change made in §85. At the time of the drafting of this law, the several states were widely apart in the jurisprudence relating to negotiable instruments. It could not be otherwise than that there would be a lack of harmony in all the law, as interpreted by the courts of the several states, because of a lack of uniformity of the texts of the statutes of the several states in relation thereto. Since the adoption of this Negotiable Instruments Law under the tentative arrangement to have it uniform throughout all of the states, it has been the policy of the courts to construe the law liberally in the interests of uniformity. Many opinions of different courts have stated that the law in relation to the material alteration of an instrument rests upon public policy, in that, to maintain the integrity surrounding commercial relations no party to be benefited should be permitted under any guise to alter the written obligation of another without his authority or assent. To do otherwise would open a door to the perpetration of all kinds of fraud, inasmuch as written instruments, and especially commercial paper, are passed from hand to hand, through the hands of citizens, banks, and clearing houses, many hundreds and even thousands of miles distant from the party or parties to be bound, who have no control whatever over the possession of such instruments, and on account of which, cannot prevent any person in the possession

thereof from doing therewith as his inclination might dictate, in utter disregard of honesty and good conscience. The matter is well summed up in the opinion in a New York case, which says: "It is necessary to commercial transactions that the rules of liability of parties to negotiable paper should be fixed and certain. It is better that such rules be arbitrary than that they lack precision and certainty." *First National Bank, etc.,* v. *Gridley* (1906), 98 N. Y. Supp. 445, 452, 112 App. Div. 398, 407.

Three cases are cited by appellee to sustain its point, that the payee of a promissory note may materially alter the same to make it conform to the intention of the parties thereof. *Busjahn* v. *McLean* (1892), 3 Ind. App. 281; *Osborn* v. *Hall* (1903), 160 Ind. 153; *John Kindler Co.* v. *First Nat. Bank* (1915), 61 Ind. App. 79. These cases are not controlling. In the case of *Busjahn* v. *McLean, supra,* the note read "$175" in figures and "one hundred and seventy" in writing. The alteration was by adding the word "five" to "one hundred and seventy." The written words controlled the figures. The alteration therefore changed the tenor of the note and was material, which under the present statute would have avoided the note. Former decisions held that changing an ambiguity in a note did not avoid it. *Murray* v. *Graham, supra.* In the case of *Osborne* v. *Hall, supra,* the alteration was not material. It has never been the law that an immaterial alteration avoided the note. In the case of the *John Kindler Co.* v. *First Nat. Bank, supra,* the alteration of this note is based upon the rules relating to the filling in of blank lines. The facts disclose that the case was decided upon the order of the maker of the note in letters and that it did not avoid the note. These cases are not to be overruled, but rather they have distinguished the rule of law in relation to the alteration of written instruments, to

make them conform to the agreement of the parties as understood by one party and without the consent of the party or parties to be bound. The statute in force now must surely change the jurisprudence of this state from what it was at the time the three cases were decided, if the interpretation of them is to be such as put upon them by the appellee. It is the opinion of the writer, based upon said §§124 and 125, that a party cannot alter a negotiable note for the purpose of making it conform to the original agreement without the assent of the party or parties to be bound, and then be permitted to recover on the note. For to permit this would be in effect to render all written instruments oral ones, subject to change at the will of the party or parties to accord with his or their remembrance of the contract. *Murray* v. *Graham, supra; Hunt* v. *Gray* (1871), 35 N. J. Law 227, 10 Am. Rep. 232.

It is the opinion of the writer that the note sued upon was given in renewal of a note which, at the time of such renewal, had theretofore been materially altered by the payee, appellee herein, which avoided it, and that the note which had been so materially altered was insufficient upon which to base a renewal note, and that the renewal note based thereon is without consideration.

Myers, J., concurs in this dissenting opinion.