Argued March 17, affirmed April 6, rehearing granted May 25, 1915. On rehearing former opinion set aside and judgment reversed July 6, rehearing denied September 7, 1915.

## NIEMI *v.* STANLEY SMITH LUMBER CO.*

(147 Pac. 532; 149 Pac. 1033.)

**Master and Servant—Injury to Servant—Dangerous Place to Work—Evidence—Question for Jury.**

1.   Whether an employer was negligent in selecting a tree to which a cable was attached near a place where employees were cutting down trees, *held,* under the evidence, for the jury.

―――――

*As to duty of active inspection of instrumentalities, see note in 41 L. R. A. 70.

As affected by fact that instrumentality was purchased from responsible dealer, see note in 40 L. R. A. (N. S.) 1120.   Reporter.

Master and Servant—Injury to Servant—Negligence—Proximate Cause —Question for Jury.

2.   Whether the negligence of an employer was the proximate cause of the death of an employee, *held*, under the evidence, for the jury, under the rule that it is the duty of the jury to look at the facts and ascertain whether they are naturally and probably connected in orderly sequence with the prime cause, or disconnected by some intervening agency affecting its operation.

[As to proximate and remote causes of injury from negligence, see notes in 50 Am. Rep. 569; 36 Am. St. Rep. 807.]

Master and Servant—Injury to Servant—Contributory Negligence.

3.   Whether an employee injured while cutting down a tree was guilty of contributory negligence, *held*, under the evidence, for the jury.

Master and Servant—Injury to Servant—Assumption of Risk.

4.   Whether an employee injured while cutting down a tree assumed the risk arising from the negligent failure of the employer to furnish a safe place to work, *held*, under the evidence, for the jury.

Master and Servant—Injury to Servant—Employers' Liability Act.

5.   A complaint in an action for the death of an employee cutting a tree which fell on wires attached to another tree, by reason of which the latter tree broke and fell on him, which alleges that the employer negligently selected an unsafe tree to which it attached wires and negligently failed to top the tree selected and to clear the timber from the tree, that by reason thereof the accident happened and rendered the work of the employee hazardous, states a cause of action, under the Employers' Liability Act (Laws 1911, p. 16), both as to machinery and inherently dangerous occupation.

[As to what is "accident arising out of and in course of employment" within Employers' Liability Act, see note in Ann. Cas. 1914D, 1284.]

Death—Action for Death—Statutory Provisions—Construction.

6.   Section 380, L. O. L., providing that, where death of a person is caused by the wrongful act of another, the personal representative of decedent may sue at law therefor, if decedent, had he lived, could have sued for an injury done by the same act, is not repealed by Employers' Liability Act, but the two must be construed together, and, as far as possible, effect must be given to the provisions of each, but the provision in the Employers' Liability Act, enumerating the persons entitled to sue for death, is exclusive of Section 380, so long as any one of the persons named therein survive, but, in case none survive, the representative of decedent may sue under Section 380.

Pleading—Complaint—Cause of Action—Sufficiency.

7.   A complaint must state facts sufficient to constitute a cause of action and entitling plaintiff to recover.

From Hood River: WILLIAM L. BRADSHAW, Judge.

Department 1.   Statement by MR. JUSTICE BENSON.

This is an action by Joel Niemi, administrator of the estate of Oscar Laine, deceased, against the Stanley Smith Lumber Company, a corporation, for damages for personal injuries causing the death of Oscar Laine the plaintiff being the administrator of decedent's estate.   The circumstances surrounding the accident, so far as they are of value here, are as follows: Defendant is a corporation engaged in the manufacture of lumber in Hood River County.   In this occupation it maintains a number of logging camps in whose vicinity the trees are felled and prepared for the sawmill, to which they are subsequently transported. Among other equipment for this purpose defendant had a large aerial wire cable attached at each end to a standing tree, about 60 feet from the ground, so as to permit the logs to be hoisted and carried along said cable, and down out of the mountains.   The upper one of these trees, which will be called, for the purposes of this discussion, "the gin tree," had the aerial cable attached thereto by a heavy iron band, or collar, to which were also attached five guy wires, which radiated from the collar to stumps used as anchors, which wires varied in length from 100 to possibly 125 feet. The aerial cable and guy wires were tightly stretched for staying the gin tree.

On the 12th of September, 1913, decedent, as an employee of defendant, with another, was engaged in felling trees in the vicinity of the gin tree above mentioned. They had been so employed until about 5 o'clock in the afternoon, when they cut down a tree, which in falling struck a guy wire near the stump to which it was anchored, and the shock of the impact was so great as to break the gin tree in two at a point about

22 feet below the collar to which the cable and guy wires were attached. As the gin tree broke, one of the falling branches struck the decedent, causing injuries from which he subsequently died, and this action followed. From a judgment for plaintiff, defendant appeals.    Affirmed.

For appellant there was a brief over the name of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Robert S. Eakin, Jr.*

For respondent there was a brief with an oral argument by *Mr. Leroy Lomax.*

Department 1.    Mr. Justice Benson delivered the opinion of the court.

It is conceded by the parties that the plaintiff's action is based upon defendant's liability at common law. There are two assignments of error.

1. Defendant first contends that the trial court erred in denying a motion for a nonsuit. This contention is based upon the grounds: First, that there is no evidence tending to prove any negligence upon the part of defendant in selecting the gin tree, or using it for the purpose to which it was applied. It is not necessary to go into the evidence extensively upon this point, but it is sufficient to say that, while there is some conflict in the testimony, one witness who examined the remains of the tree after the accident says that "it was a dead tree; it showed that it had been dead for some time." The evidence also discloses that the cable had been attached during the preceding fall, and we think that it was a question for the jury to answer as to whether defendant had been negligent in the selection thereof.

2. Defendant next insists the negligence alleged by plaintiff was not the proximate cause of the injury complained of. It is true that the tree was not broken by the use for which the tree was selected and used, but by the falling of a tree across one of the guy wires, which act defendant contends should be regarded as the proximate cause.

It is not always easy, in a particular instance, to place a finger upon a specific act, and safely say: "This is the act which directly produced a given result." In this case the successive steps are that defendant selected a certain tree to carry a cable, and stayed the same with guy wires. The decedent felled a tree which struck a guy wire, breaking the gin tree, of which a falling limb struck and killed him. If Laine had not felled the tree so that it struck the guy wire, the gin tree would not have broken, and the falling limb would not have caused a death. But, if the guy wire had not been attached to a defective tree, it may be that no accident would have happened. The falling tree striking the wire, the impact breaking the gin tree, and the falling limb killing the man, might, we think, be classed as an unbroken chain of causal events. As is said by Mr. Justice Lord, in the case of *Hartvig* v. *Northern Pac. L. Co.,* 19 Or. 525 (25 Pac. 359):

" 'Whether the injury in a particular case was such natural and proximate result of the wrong complained of is ordinarily for the decision of the jury.' * * It is their province to look at the facts as they transpire, and ascertain whether they are naturally and probably connected in orderly sequence with the prime cause, or disconnected by some intervening agency affecting its operation."

Under the evidence we think that this question was properly submitted to the jury.

3. We shall now consider defendant's contention that contributory negligence is conclusively disclosed by plaintiff's evidence. It appears from the record that Laine and a fellow-workman had been cutting trees all day, in the same vicinity, under the direction of a foreman. A short time prior to the falling of the tree which struck the guy wire, they had felled another tree which had lodged against a hemlock. The last tree which was cut, and fell against the guy wire, stood about 40 feet away from the gin tree, and about midway between two guy wires, which were 10 feet apart. A short distance beyond this tree, and also midway between the guy wires, stood the hemlock, with the cut tree lodged against it. Before felling the last tree Laine asked the foreman if he should not cut the hemlock, but the foreman said, "No." The surviving workman, Kyllonen, says at one time that they felled the last tree in such a manner as to dislodge the tree which was leaning against the hemlock. At another time he says: "We tried to fall it straight between the guy wires." Taking this evidence into consideration, we are forced to the conclusion that it was for the jury to say whether there was contributory negligence.

4. We come, then, to the question of the assumption of risk, and this problem is closely connected with that of proximate cause. If the jury should find that the attaching of the cables and guy wires to a defective tree was a link in a continuous chain of causes without a break, and that defendant was negligent in the matter of furnishing decedent with a safe place to work, then it would also be their duty to determine whether or not the danger arising from such negligence was so open and apparent that the servant should have known it and therefore assumed the risk.

Appellant's second assignment is that the court erred in denying the motion for a directed verdict. What we have already said in regard to the motion for a nonsuit is equally applicable to this; and the judgment must be affirmed.

Affirmed.    Rehearing Granted.

Mr. Chief Justice Moore, Mr. Justice Burnett and Mr. Justice McBride concur.

———————

Reversed July 6, rehearing denied September 7, 1915.

On Rehearing.

(149 Pac. 1033.)

A rehearing having been granted, the former opinion was set aside and judgment of the lower court is reversed and action dismissed without prejudice.

Reversed.    Rehearing Denied.

For appellant there was a brief over the name of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Thomas H. Crawford.*

For respondent there was a brief and an oral argument by *Mr. Leroy Lomax.*

In Banc.    Mr. Justice Benson delivered the opinion of the court.

Upon the rehearing in this case a question was suggested which had not been presented at the former argument herein, and this is the only matter which we shall now consider: Does the complaint state a cause of action in favor of the administrator? The sub-

stance of the complaint is that Oscar Laine died intestate, and that plaintiff is the duly qualified administrator of his estate; that the defendant corporation was and is engaged in operating a sawmill and lumbering plant; that a part of defendant's equipment consisted of an aerial cable for transporting sawlogs, which cable was operated by means of a donkey-engine; that the cable was attached at each end to a tree about 60 feet above the ground; and that such trees were stayed by guy wires radiating in several directions. Then follow these recitals of the alleged acts of negligence causing the death of Laine:

"That the defendant carelessly and negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, selected an old, doty, faulty and unsafe tree to attach one end of said cable wire to, and did carelessly, negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, attach and fasten one end of said cable wire to said old, doty, faulty and unsafe tree, and did carelessly and negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, attach and fasten to said old, doty, faulty and unsafe tree, two certain wires, commonly known as guy wires, which were stretched and extended out from said old, doty, faulty and unsafe tree, the other ends of said guy wires being attached to two certain stumps, and each being stretched to a high tension, and that said cable wire and said guy wires were of great weight, and produced much strain upon said old, doty, faulty and unsafe tree, to which said wires were so attached, and said tree and said wires were in such condition, and were so existing, at the time the deceased received his injuries and lost his life, as hereinafter complained of. That the defendant carelessly and negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, attached said cable wire and said guy wires to said old, doty, faulty and unsafe tree at

a point about 60 feet from the ground, and carelessly and negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, failed, neglected and omitted to top said tree above said wires; and carelessly and negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, left the top of said tree above said wires standing, which was unsafe and dangerous to the lives and safety of defendant's employees, and particularly the deceased, in working near and above said tree.

"That defendant carelessly and negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, negligently and carelessly failed and omitted to fall, clear, and clean the timber and brush away from and about said old, doty and faulty tree, before so attaching said cable and said guy wires to said tree.

"That defendant, in disregard of the safety of its employees, particularly of the deceased, carelessly and negligently left standing, near said old, doty and faulty tree, to which said cable and guy wires were so attached, certain timber, which was standing between said guy wires and in the vicinity of and near to said old, doty and faulty tree, to which said cable and said guy wires were so attached.

"That by reason of said tree, to which said cable and said guy wires were so attached, being old, doty and faulty, and by reason of the same not being topped above where said wires were so attached, and by reason of the timber and brush in the vicinity of said tree not being cut, removed and cleared away, and by reason of the great tension of said cable and said guy wires, and the weight and strain upon the same, the said premises, and the vicinity about said old, doty and faulty tree, were at the times and dates hereinafter complained of, and at the time and date deceased received his injuries, resulting in his death, as hereinafter complained of, an extremely dangerous and unsafe place for defendant's employees, and particularly the deceased, to engage in their work of cutting and

falling the timber about said premises, and near said old, doty and faulty tree, as hereinafter particularly alleged.

"That on or about the 12th day of September, 1913, the deceased was employed by the defendant to cut down and fall timber for the defendant in the mountains, to be transported to its said sawmill and lumbering plant, and on the 14th day of September, 1913, while deceased was so employed, by the defendant, the defendant, in disregard of the lives and safety of its employees, and particularly of the deceased, carelessly and negligently instructed and directed the deceased to go to the vicinity of said old, doty and faulty tree, to which said cable and said guy wires were so attached, and to the said extremely dangerous and unsafe premises, as hereinabove alleged, and carelessly and negligently, and in disregard of the lives and safety of its employees, and particularly of the deceased, did instruct and direct said deceased to cut down and fall one large green tree, which was standing between said guy wires, and at a distance about 40 feet from said old, doty and faulty tree, to which said cable and said guy wires were so attached, as hereinabove alleged, and that said guy wires were only about 20 feet apart at the place where said tree, which deceased was so instructed and directed to fall, was standing.

"That deceased did, in pursuance to said instructions and directions, so given him by the defendant, proceed to and did cut and fall said green tree so standing between said guy wires, and at said distance of about 40 feet from said old, doty and faulty tree, to which said cable and guy wires were so attached, and did cut and fall the same in a careful, cautious and prudent manner, directing and falling the same parallel with said guy wires and away from said old, doty and faulty tree, to which said cable and said guy wires were so attached. That said tree, so cut and fallen by the deceased, had limbs projecting out from the trunk of said tree, and that, in the falling of said tree, said limbs, without any fault or carelessness upon the part of the deceased, struck one of said guy wires, pro-

ducing weight and strain upon said wires, and said old, doty and faulty tree, to which said cable and guy wires were so attached, and thereby and by reason of which said old, doty and faulty tree was broken, and the top thereof broken, and did fall and strike the deceased upon the head and body of said deceased, mortally wounding and injuring him, whereby, and by reason of which said mortal wounds and injuries, said deceased thereafter, and in the evening of the 14th day of September, 1913, died. That said mortal wounds, injuries and the death of said deceased, which resulted therefrom, were caused and produced by and through the negligence and carelessness and negligence and omission of the defendant, as hereinabove alleged.

"That defendant, by the exercise of ordinary care and prudence, could have known, and did know, that said premises above described were extremely dangerous and hazardous to the lives and safety of its employees, and particularly the deceased, who was sent to work near and about said premises, and by the exercise of ordinary care and prudence could have known, and did know, that said old, doty and faulty tree, to which said cable and guy wires were so attached, was extremely dangerous and unfit to so use, and to so attach said cable and guy wires to, and was extremely dangerous and hazardous to the lives and safety of the employees of the defendant, and particularly the deceased, to be left so standing without being topped, and could have known, by the exercise of ordinary care and prudence, and did know, that it was extremely dangerous and hazardous to lives and safety of its employees, and particularly the deceased, to leave said premises in and about said old, doty and faulty tree, and said cable and said guy wires, without the timber and brush having been, prior thereto, fallen and cleared away, and could have, by exercise of ordinary care and prudence, known, and did know, that the place where said deceased was so instructed and directed to work, as above alleged, and where said deceased so received his said mortal wounds and injuries, as above alleged, which resulted in the death of said deceased, was an

extremely hazardous, dangerous, and unsafe place for defendant's employees, and particularly the deceased, to work.

"That the defendant was the owner and had charge of the said donkey-engine, said cable wire, said guy wires, and said old, doty and faulty tree, and the entire structure, apparatus, and device so used by said defendant in moving, hauling and transporting its said logs and timber to its said sawmill and lumbering plant, and had charge of and was responsible for the said work in which deceased was engaged at the time he sustained said injuries, so causing his death, and had charge of and was responsible for the premises and place where said cable wire, said guy wires, and said old, doty and faulty tree were situated, and directed deceased to and was responsible for deceased's working at said place, near said cable wire and said guy wires, and said old, doty and faulty tree.

"That said work in which deceased was so engaged at the time he received said injuries was very hazardous and involved great risk and danger to the lives of the employees of defendant, including the deceased, and defendant failed and neglected to use such device, care and precaution which was practicable to use for the protection and safety of the lives of its employees and the protection and safety of the life of deceased.

"That said old, doty and faulty tree, to which said cable and said guy wires were so attached, could have been topped a few feet above where said wires were so attached, and the premises near said old, doty and faulty tree could have been cleared away by the defendant, which would have rendered the said place where deceased was so working when he sustained said injuries, much safer and much less dangerous to the life of deceased, and would not have impaired or in any manner detracted from the efficiency and use of said cable wires, and said guy wires, said old, doty and faulty tree, and said device and apparatus so used by defendant in moving, hauling and transporting its said logs and timber to its said sawmill and lumbering plant, and defendant's failure, neglect and omission

to use such care and take such precautions, resulted in deceased sustaining such injuries, which caused his death, as above alleged.''

5. It will be observed that the allegations above quoted bring the cause of action fully and completely within the provisions of the Employers' Liability Act, both as regards machinery and an inherently dangerous occupation.   Section 4 of the act referred to reads as follows:

''If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act by any owner, contractor, or subcontractor, or any person liable under the provisions of this act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of action without any limit as to the amount of damages which may be awarded'': Laws 1911, p. 17.

6. Plaintiff contends that he is entitled to bring this action under the provisions of Section 380, L. O. L., which reads as follows:

''When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission.   Such action shall be commenced within two years after the death, and damages therein shall not exceed $7,500, and the amount recovered, if any, shall be administered as other personal property of the deceased person.''

This law was enacted by the legislature in 1862, and is a modified version of the English statute, known as Lord Campbell's Act, adopted because of the fact that, under the common law, no recovery could be had for the death of a person by the wrongful act or omission

of another. The Employers' Liability Act was adopted by the people of this state by initiative in 1910. It has been held by this court that the provisions of the later act do not repeal Section 380, L. O. L.: *Statts* v. *Twohy Bros. Co.*, 61 Or. 606 (123 Pac. 909); *McFarland* v. *Oregon Electric Ry. Co.*, 70 Or. 28 (138 Pac. 458). The two acts, being directed to one common object (that is, to provide a statutory action for the death of a person resulting from the wrongful act or omission of another), must be construed together, and, as far as possible, effect must be given to the provisions of each. A special provision for a certain class of cases will take that class out of the general terms used in either statute. Thus the Employers' Liability Act provides by whom an action for the wrongful acts or omissions enumerated therein shall be instituted, and, as to a death arising therefrom, it is exclusive of Section 380, as long as any one of the beneficiaries named therein survive, since the terms of that section are general: *Pittsburgh, Ft. Wayne & Chicago Ry. Co.* v. *Vining's Admr.*, 27 Ind. 518 (92 Am. Dec. 269). In discussing this question in the case of *Statts* v. *Twohy Bros. Co.*, 61 Or. 606 (123 Pac. 909), Mr. Justice MOORE says:

"The act first referred to is limited in its application to certain enumerated causes, and it would appear that an action to recover damages for the death of an employee could be maintained only by a relative of the deceased."

It is conceded that there can be but one recovery; and therefore to hold that the one who first appeals to the courts may thereby bar the other would be to open the gates to an indecent scramble for precedence in beginning an action and would render it possible for a designing person to have himself appointed adminis-

trator of the decedent's estate even before the widow and orphaned children had learned of the calamity which had overtaken them. While there is scant authority upon the question as to whether or not the administrator can maintain the action in the event of a failure of all the beneficiaries named in the Employers' Liability Act, we conclude that the better view is well expressed in the case of the *Pittsburgh, Ft. Wayne & Chicago Ry. Co.* v. *Vining's Admr.,* 27 Ind. 518 (92 Am. Dec. 269), in which the court says:

"So, also, although by the provisions of Section 27 [2 Gav. & H. St. 1862, p. 56] the action for the death of a child must be brought by the father, or in case of his death, or desertion of his family, or imprisonment, by the mother, or by the guardian for his ward, it seems clear to us that, where there was neither father, mother, nor guardian, the case, not being specially provided for, would then come within the provisions of Section 784 [page 330], and the administrator would be the proper person to sue."

7. There was some discussion upon the argument as to whether this question should not have been raised by a plea in abatement, but we think that it goes to the merits, and that a complaint, in order to state facts sufficient to constitute a cause of action, must not only state facts sufficient to entitle someone to a recovery, but must also show, upon its face, facts which disclose that the plaintiff is the one who is entitled to recover: 31 Cyc. 102, and cases there cited.

It follows from these views that the judgment of the lower court must be reversed and the action dismissed, without prejudice to the right of the one entitled under the Employers' Liability Act to bring an action for the death of Laine.

REVERSED.   DISMISSED WITHOUT PREJUDICE.

MR. JUSTICE McBRIDE did not sit.