## In re GOLDSBERRY ESTATE.
## GOLDSBERRY v. GREEN et al.

No. 5984. Decided July 29, 1938. (81 P. 2d 1106.)

380

*George D. Preston* and *Melvin C. Harris*, both of Logan, for appellant.

*Leon Fonnesbeck,* of Logan, for respondents.

WOLFE, Justice.

*Appeal from an order refusing probate of a will on the ground that it had been obtained by duress and undue influence.* On November 29, 1933, decedent, Nancy Laura Goldsberry, made what purported to be a will in which C. A. Goldsberry, one of her sons, was made sole beneficiary. Upon the death of Nancy Goldsberry, this will was not tendered for probate because, as testified by C. A. Goldsberry, all the property of decedent stood on the record in his name. About 1922 he had made a trade with his mother conveying to her a house and lots in Paradise, together with $2200 to boot, evidenced by $1700 in cash and a $500 negotiable note made out in the name of the son, for 27 acres of land belonging to the mother. While the deed from mother to son was recorded, the deed from son to mother was not recorded. The 27 acres, therefore, were still in the name of C. A. Goldsberry; the note was in his name. The bank account containing the unused portion of the $1700 was a joint account. Therefore, the attorney for C. A. Goldsberry advised him that it was not necessary to probate the will. But events compelled its tender for probate. A number of the other children of Nancy Goldsberry filed a petition for an administration of her estate. They set up her death, the fact that she owned property, and that they were informed there was a will in favor of C. A. Goldsberry but that said will was made through fraud and duress and therefore Nancy Goldsberry died intestate. C. A. Goldsberry thereupon filed in the same proceeding objections to the appointment of an administrator on the grounds that there existed a will. He in the same petition set up facts regarding the making of the

will, alleged it to be a valid will and with the petition filed the will and asked that it be probated. To this petition, Jessie L. Green, a granddaughter of Nancy and daughter of C. A. Goldsberry, filed a reply in which it was alleged in paragraph 3 as follows:

"Denies that the said decedent left a last will and testament. In this connection, however, contestant states that the said decedent, Nancy L. Goldsberry, did sign a document, which purported to be a will, but alleges that she signed the same under duress, menace, fraud and undue influence, exercised upon her by C. A. Goldsberry, the sole beneficiary of said will. In this connection contestant further states that the said decedent at the time of signing the said will was of the age of 85 years, or thereabouts, and was infirm and unable to take care of herself and was forced and required to sign the purported will as a condition of receiving any aid and support or care from the said C. A. Goldsberry. Contestant further states that the said will does not distribute her property according to the will and desire of the said decedent."

Nothing in the reply shows her relationship with the proponent of the will or with decedent. The reply simply reads: "Comes now Jessie L. Green, and for a reply," etc. C. A. Goldsberry demurred to the reply on the following grounds:

"1. That the same does not state facts sufficient to constitute a reply to petition for 'objections to granting petition for letters of administration and petition for probate of will'.

"2. That the same does not state facts sufficient to constitute a defense to the petition for probate of the will, by the petitioner, C. A. Goldsberry."

The court overruled the demurrer at the threshold of the trial. There was no argument. The contestant's pleading did not show whether or not contestant was an heir. It is contended that the above demurrer reached such deficiency. The writer doubts whether it did. His associates think that it did. The question is a refined one. In most jurisdictions the statutes provide that any interested party may contest the probate of a will. It has generally been held that this precludes any but an interested

party from contesting a will. *Werner* v. *Frederick,* 68 App. D. C. 158, 94 F. 2d 627, 630; *In re Carlson's Estate,* 153 Or. 327, 336, 56 P. 2d 347; *In re Santini's Estate,* 56 Nev. 350, 53 P. 2d 338; *Jensen* v. *Hinderks,* 338 Mo. 459, 92 S. W. 2d 108; *In re Meredith's Estate,* 275 Mich. 278, 292, 266 N. W. 351, 104 A. L. R. 348; *Burk* v. *Morain,* Iowa, 272 N. W. 441, 112 A. L. R. 79; *In re Browning's Will,* 274 N. Y. 508, 10 N. E. 2d 522; *In re Morrow's Will,* 41 N. M. 723, 735, 73 P. 2d 1360; *Austin* v. *Patrick,* 179 Miss. 718, 176 So. 714; *Reed* v. *Home National Bank,* Mass., 8 N. E. 2d. 601, 112 A. L. R. 657; *Succession of Feitel,* 187 La. 596-618, 175 So. 72; *In re Stoiber's Estate,* 101 Colo. 192, 72 P. 2d. 276, 112 A. L. R. 1416; *In re Sycle's Estate,* 195 A. 857, 16 N. J. Misc. 23; *Guilfoil* v. *Hayes,* Va., 194 S. E. 804. Our statute, Sec. 102-3-7, R. S. Utah 1933, reads, insofar as here material: "If any one appears to contest the will," etc. Thus, our statute does not in terms require the person appearing to contest the will to be an heir; but the case of *In re Dong Ling Hing's Estate,* 78 Utah 324, 2 P. 2d 902, infers that the contestant must be an heir. That case states (page 903):

"If he is an heir of the deceased he undoubtedly has a right to contest the will, but if not he is a stranger to the proceeding."

We assume, therefore, that the law in this State is that a contestant should be an interested party. If he or she must be an interested party and the contest fails to show whether or not the contestant is an interested party, is the omission reachable by general demurrer? My associates reason that since only an interested party may contest, the contestant must affirmatively plead and prove his interest in order to state a cause for contest. It must be admitted that there is authority to this effect. *Cummings* v. *Keach,* 146 Kan. 157, 68 P. 2d 1089, 110 A. L. R. 1235; *Gruender* v. *Frank,* 267 Mo. 713, 719, 186 S. W. 1004; *Smith* v. *Smith,* 327 Mo. 632, 37 S. W. 2d 902; *Jackson* v. *Jackson,* 84 W. Va. 100, 106, 99 S. E. 259; *State* v. *McQuillin,* 246 Mo. 674, 152 S. W. 341, Ann. Cas. 1914B, 526; *Haines* v. *Little,* Tex. Civ. App., 242

S. W. 266, 268; *Ocobock* v. *Eeles*, 37 App. Div. 114, 55 N. Y. S. 1118, 1120; *Henriques* v. *Yale University*, 28 App. Div. 354, 51 N. Y. S. 284; *Jensen* v. *Hinderks*, supra.

In Smith v. Smith the Missouri court said at page 904 of 37 S. W. 2d:

"We have heretofore held, in *Gruender* v. *Frank*, 267 Mo. 713, 186 S. W. 1004, that in a will contest the facts showing contestant's interest and consequent right to maintain the suit are constitutive elements of the statement of plaintiff's cause of action, and, if not stated in the petition, the petition fails to state facts sufficient to constitute a cause of action  *  *  *."

The writer differs in this regard and shall briefly state his reasons. The cases holding that the contest must affirmatively show that the contestant is an interested party evidently apply the principle that in a case where one sues another be must show that the right of action is in him. To state a cause of action, he must not only show a right on someone's part and a violation of that right by defendant, but must show that the right which has been violated by defendant was a right in him, the party asking for recovery. There is ample authority to support this principle. *Hunt* v. *Monroe*, 32 Utah 428, 91 P. 269, 11 L. R. A., N. S., 249; *Cummings* v. *Keach*, 146 Kan. 157, 68 P. 2d 1089, 110 A. L. R. 1238; *Rills* v. *Shell Petroleum Corp.*, 177 La. 906, 149 So. 515; *Trahan* v. *State Highway Comm.*, 169 Miss. 732, 752, 151 So. 178; *Townsend* v. *Harmon*, 5 W. W. Harr. 562, 568, 35 Del. 562, 568, 171 A. 178; *Rapp* v. *Oklahoma Tax Comm.*, 166 Okl. 210, 213, 27 P. 2d 157; *Ideal Brick Co.* v. *Gentry*, 191 N. C. 636, 132 S. E. 800; *First Nat. Bank* v. *Eddy*, 47 S. D. 297, 198 N. W. 554; *Toner* v. *Wagner*, 158 Ind. 447, 63 N. E. 859; *American Trust & Sav. Bank* v. *McGettigan*, 152 Ind. 582, 586, 52 N. E. 793, 71 Am. St. Rep. 345; *Niemi* v. *Stanley Smith Lumber Co.*, 77 Or. 221, 235, 147 P. 532, 149 P. 1033, 1035; *Higgins* v. *Swygman*, 194 Ind. 1, 7, 141 N. E. 788; *Asplund* v. *Hannett*, 31 N. M. 641, 642, 249 P. 1074, 58 A. L. R. 573.

"It is elementary that a complaint good in law must not only state a complete cause of action against the defendant, but it must also show a right of action in the plaintiff." *Hunt* v. *Monroe*, 32 Utah 428, 435, 91 P. 269, 271, 11 L. R. A., N. S., 249.

But there is a distinction between a cause of action wherein one seeks to obtain a judgment which requires another to make restoration either by money payment or by doing a positive act or desisting from doing an act, and a judgment which decides whether a thing exists or not. The proceeding to probate a will involves the issue only as to whether the document offered is or is not that thing which the law denominates a will. The notice of hearing is notice to all the world that such issue is to be adjudicated. It is not an invitation to the world to contest the will, but a notice to all those in the world who are interested and claim the document not to be a will to come in and say so. But if a stranger comes in and contests, the contest is not insufficient on demurrer, because the issue as to whether the document is or is not a will remains the same whether an heir or stranger aids the court in determining it. I think where a stranger sets up that the document is not a will, his contest is subject to objection and can be dismissed on objection; but if there is no objection and the case goes to judgment, the judgment will stand. To hold otherwise might introduce some tangles in the warp and woof of the law. A document is proffered as a will. Suppose as in this case a relative, not an interested party, contests on the ground that the will was forged by the two witnesses to it, one of whom is offering it. No objection is made to the contestant's status, although it appears on the face of the contest that he is not interested. The court finds the will to be a forgery. I think the judgment that the instrument was not a will would be a good judicial pronouncement not only as to the proponents of the will but as against the world. Surely, it was the duty of the court, even of its own motion, to determine whether or not a will existed. The fact that some stranger aided in pointing out that it was not a will cannot alter the court's finding.

The difficulty comes in carrying over into will contests the rules which apply when the controversy is as to whether a right exists in one person and whether it has been invaded by another person. We should recognize the proceeding for the probate of a will for what it really is, to wit, a proceeding to determine whether a certain thing exists or not. At the same time, by permitting the court to dismiss in case of an interloper, we protect the proponents of the will against officious meddling.

The case of *Braeuel* v. *Reuther*, 270 Mo. 603, 193 S. W. 283, L. R. A. 1918A, 444, Ann. Cas. 1918B, 533, evidently recognized this distinction between will contests and personal contests. It states (page 284) :

"Upon the action being brought the parties thereto become of minor importance; the prime purpose of the proceeding being to determine whether there is a will or not. The importance of this concrete question being paramount, we might well content ourselves with the course that, having regularly acquired jurisdiction, we will, regardless of the parties, and with indifference to the motions filed herein, review the record and render judgment thereon; but it is meet and proper that other questions submitted pro and con in regard to these motions be determined."

But the main thing is to have a settled rule, and, as the majority of this court think that failure of the pleading in contest to show affirmatively that the contestant is an interested party is reachable by general demurrer, such will be our decision in regard to that point.

It is further contended that the facts showing undue influence are not sufficiently alleged. The allegations of the reply here assailed by demurrer were set out above. We shall not here repeat them. We conclude that the "reply" does not state facts which show undue influence. We are especially reluctant to so hold in view of the fact that a reading and re-reading of the transcript has brought us to the conclusion that there is evidence to sustain the judgment of the court. But we cannot put our stamp of approval on this pleading. The first clause states merely a conclusion

and not an ultimate fact. 1 Bancroft Probate Practice 341, Sec. 186. There must be some facts, although ultimate in character, to show what the undue influence was or the means used. These ultimate facts need not be broken down in the pleading in their evidentiary constituents, but at least such facts must point to the type of undue influence or the general manner by which it was exercised or the general processes by which it was applied. The allegation that the will was obtained by undue influence is merely a conclusion. Was it obtained by the exploitation of a confidential relationship used to ingratiate the beneficiary and prejudice the donor against others? Was it applied by economic means in the form of a duress? Was it a matter of such pressure by one strategically situated so that the other was compelled to purchase peace of mind by submission? At least the general area of human actions within which the alleged schemer operated must be set out. It is true that the cases are difficult to reconcile along this line of demarcation. Apparently a few well-chosen words may throw the pleading on that side of the line where resort does not need to be made to a conclusion of law to make a clear and sufficient allegation of undue influence. See Sec. 187, Vol. 1, Bancroft Probate Practice. But the pleading here attacked leaves no doubt. When we examine that part of it which attempts to alleged the manner, means or type of undue influence, it consists of, first, the matters of inducement, to wit, that decedent was 85 years of age and was infirm and unable to take care of herself. Up to this point there is no allegation of undue influence. It is attempted evidently in the next phrase, "and was forced and required to sign the purported will as a condition of receiving any aid and support or care from the said C. A. Goldsberry." If the allegation had stopped with the phrase "and was forced and required to sign the purported will," it might be argued that the statement showed force applied even though the kind of force or how it was applied was not alleged. But the phrase, "as a condition of receiving any aid and support or care from the said C. A. Goldsberry,"

apparently negatives any efficacy which the first clause might have had. It is not alleged that C. A. Goldsberry was obliged to support or care for her and that therefore she was forced to make a will to obtain a right which she was entitled to. It is not alleged that she was in such situation that she would have been left entirely without opportunity of care and support if he did not support her or that he himself created a situation where she was compelled to rely on him or have no one, and then, in view of this situation, coerced her mind. The evidence tends to show such a situation, but the full allegation is absent. It is as if it had been alleged that she was "forced and required to sign a will" in favor of some grocery dealer "as a condition of being able to purchase groceries from said grocery dealer." The pleading is insufficient and necessitates a reversal of the case.

In view of our conclusions that the contest was insufficient in law to raise an issue, the case must be reversed and remanded. Under Sec. 104-41-23, R. S. Utah 1933, it is incumbent upon us to decide other points raised by the assignments for guidance on retrial. *Zoccolillo* v. *Oregon Short L. R. Co.*, 53 Utah 39, 177 P. 201; *Knight* v. *Southern Pacific Co.*, 52 Utah 42, 63, 172 P. 689; *Rugg* v. *Tolman*, 39 Utah 295, 303, 117 P. 54; *Caldwell* v. *Erickson*, 61 Utah 265, 276, 213 P. 182; *Babcock* v. *Rieger*, 332 Mo. 528, 543, 58 S. W. 2d 722; *Stocker* v. *Boston & Maine R. R.*, 83 N. H. 401, 407, 143 A. 68; *Handley* v. *Randolph*, 133 Cal. App. 284, 289, 23 P. 2d 1052.

Assignments 5, 6, 7, 8, and 9 relate to alleged errors in the admission of evidence. The most important is the admission by the court of the decedent's purported statement to Jessie Green, not made in the presence of C. A. Goldsberry, and made after she evidently had agreed to will him everything, but on the day before the will was actually executed, said statement to Jessie Green reading as follows:

"A. She says she wasn't willing to do this. She says, 'I want my property to be divided equally among my children, but' she says, 'I

have got to be taken care of; some one has got to do it; I can't be left here alone.' She says, 'Your father didn't want to come back here unless he gets something for taking care of me.'"

The admissibility of such declarations is well treated in a note contained in 79 A. L. R. 1447. To this note and the numerous cases discussed and cited from therein we refer the reader. The gist may be stated as follows: The "declarations of the testator not made contemporaneously with the execution of the will or so near thereto as to constitute a part of the res gestae, are not competent as direct or substantive evidence of the truth of the matters therein stated," but "are admissible to show the testator's state of mind, his susceptibility to and effect of undue influence; provided, they are not too remote and there is independent evidence tending to show undue influence inducing the execution of the will." In short, the declarations cannot be used to show what instrumentality was employed or the actions of the party alleged to have used it, but may be used to show the state of the mind claimed to have been worked upon and the effect claimed to have been produced. The declaration, therefore, was competent only to show that she was in an influenced state of mind. They showed a state of mind unwilling and undesirous of doing what she did. For that purpose the declaration was properly admitted, being made between the time in which he had gotten her to promise to will him the property and the time the will was made, which period was two days. This is on the assumption that there was evidence of undue influence independent of this declaration, a matter which will be considered later.

Admitting testimony of the real estate transactions between C. A. Goldsberry and Nancy Goldsberry was not error. It came collaterally into the case to show that the son had conveyed to his mother and had not recorded the deed. That latter fact may have had some bearing on the case. Investigations in regard to undue influence must necessarily assume a fairly wide range, especi-

ally when the will is caused to be drawn by the sole beneficiary. *Miller* v. *Livingstone,* 31 Utah 415, 88 P. 338.

The admission of testimony as to what John Goldsberry had done for his mother appears to be immaterial, but hardly prejudicial. Many pages of the record are devoted to the care and attention and support C. A. Goldsberry gave to his mother before and after the making of the will. The reader obtains the impression that the case was tried largely on the theory that C. A. Goldsberry failed to live up to a contract to take care of his mother in return for her willing him the property. We do not see how such matter bears on the question of undue influence. Both sides freely indulged excursions into this field.

There was error in admitting testimony that deceased was in 1935 or 1936 feeble and could not rest and had blue marks on her body. It was said in *Re Hanson's Estate,* 87 Utah 580, 52 P. 2d 1103, 1107:

"Moreover, since the case was tried to the court and not to a jury, we must presume that the court ignored incompetent evidence in making a finding, if there is any substantial competent evidence to support it, especially where on a particular issue the incompetent evidence is quite negligible in comparison to the competent evidence. A case tried to the court with a long record of testimony cannot be sent back because here and there incompetent testimony creeps in, if there is otherwise competent testimony to support the findings."

That statement applies to the assignments of error regarding the admission of testimony except that covered by Assignment No. 5 which relates to the declarations of the testator. Assignment No. 9 claims error in receiving bank statements of decedent in evidence. They may have had some relevancy in tending to show a control of decedent through control of her pocket book, even though their probative value was slight, if any.

Assignments 11, 12, 13, 14, 15, 16, and 17 relate to claimed error in finding specific facts on the ground that there was no evidence to support such facts. We find some evidence tending to support every finding except part of finding

No. 10. As to finding No. 2, that in 1921 some trouble developed between Orson who was renting the farm, and C. A. Goldsberry (record pages 166, 167) ; Finding No. 10 that C. A. Goldsberry had control over her money (pages 79, 80, 81, 98, 119, 127, 129, 153, 154, 165, 175) ; Finding No. 4 that proponent "kept the instrument [the deed he gave to his mother] in his control" and "intentionally prevented it from being recorded," (161, 164, 165, 166) ; Finding No. 9 that "decedent had no part whatever in making of said will. C. A. Goldsberry did not even consult her about it," (84, 85). There is positive evidence that the decedent was consulted about what was to go into the will, that being the bargain C. A. Goldsberry made with her to return with Jessie, his daughter. The finding is therefore hardly accurate. There is evidence to support the remainder of Finding No. 9 that the will was not read to decedent while witnesses were present (60, 63, 66) ; and that the testatrix did not actually request witnesses to sign (57, 58, 85, 86). There is no evidence to support that part of Finding No. 10 that decedent was too old and feeble to oppose C. A. Goldsberry. The evidence is that on occasions she was quite determined in opposing him, even to the point where at one time she told him to leave. She was physically feeble, but alert mentally. The undue influence in this case, if any, was applied apparently not to a week but to a rather strong mind.

Assignment No. 10 also contends that the same findings which it claims were not supported by the evidence were not on issues had in the case. There is some merit to this contention. Some of them have a collateral bearing; some no bearing. We shall not attempt to cull the relevant from the irrelevant. That which is irrelevant may be disregarded.

This brings us to the question whether there was any evidence to support the finding (No. 11) that the will was made under undue influence. It is considered in order to afford a criterion as to the necessary quantum of proof on re-

trial. This is not a case where we must determine whether we conclude as did the trial court. It is a law case. *In re Swan's Estate*, 51 Utah 410, 170 P. 452; *In re Hanson's Will*, 50 Utah 207, 167 P. 256. We need determine therefore only the question: Is there any competent evidence to support the court's conclusion? A way of stating the question more aptly in cases such as this where minds may differ on the interpretation and weight of evidence and in the conclusions to be drawn therefrom is as follows: Is the conclusion arrived at by the court within the range of permissible conclusions which reasonable minds may arrive at from the evidence? While the matter is not free from doubt, we think that the conclusion of the court was within the range of permissible conclusions. There is evidence to support the theory that C. A. Goldsberry, shrewder and apparently more mercenary than his sisters and brothers, had lived with his mother for many years after Orson Goldsberry quit farming her land, and during that time had it in mind to obtain all of his mother's property; that he worked to that end—not recording the deed he gave her when it came into his possession but recording the deed from her to him; that he made it unpleasant enough for the others who came on the place that they could not with self-respect remain; that by these means he put the old mother in a position where he was practically indispensable to her; that in this situation he coerced her mind to will him everything on condition that he return with his daughter, Jessie (whom she really wanted and needed and whom he would not permit to return without him) ; and that thus his will rather than hers, in view of her physical situation, dominated making of the will. This, at its best for contestant, is a borderline case. A conclusion that C. A. Goldsberry was a hard bargain driver and that he used the desire of his mother to have with her his daughter Jessie to care for her, in order to get her to make a will in his favor, but that there was no influence outside of that which exists by his being in a position where he had something

to offer which the other wanted, could at least equally well be concluded. She appeared rather to be a robust-minded person who wanted something and was willing to pay the price to get it. Either of these conclusions being from the evidence permissible, we cannot say that the evidence does not support Finding No. 11 and the judgment. Appellant cites a number of Utah cases. In *Anderson* v. *Anderson*, 43 Utah 26, 134 P. 553, the facts as recited in the opinion show nothing in the way of a leverage used by the two brothers to unduly influence the decedent brother. But even in that case there was a dissent by Mr. Justice Straup on the ground that there was sufficient evidence to support the special findings and verdict of the jury. In that case, unlike this, there was apparently no evidence from which it could be inferred that the testator was put in the attitude of saying, "It is not my will, but I must do it." (page 557.)

In the case of *In re Bryan's Estate*, 82 Utah 390, 25 P. 2d 602, the judgment, holding that there was no undue influence, was affirmed. The court granted a motion for nonsuit and dismissal. The evidence as recited in the opinion shows that Father Kennedy of the Catholic Church came at the invitation of the testator. There was nothing to show that during the few moments he was with the testator he used any undue influence. It might have been that the testator called him for the very purpose of having made a will bequeathing his property to the school over which Father Kennedy presided.

*In re Ford's Estate*, 70 Utah 456, 261 P. 15, seems at first blush to present a very strong case to go to the jury. But when it is carefully read, it will be noted that there was no evidence that the decedent was without testamentary capacity. On the contrary, he was an able business man apparently in full control of his faculties. As to undue influence, there was no evidence that the sexual practices performed by the decedent husband on the wife or by the wife on the husband played any part in influencing him in making a will giving everything to her, however the wife may have induced af-

fections of husband for her. Where the affection is the inducing cause for the will, it is the affection and not what produced the affection which influenced the making of the will. The fact that they were husband and wife and that they had made reciprocal wills, each leaving everything to the other, might account for decedent cutting out his children.

In *Re Hanson's Will*, 50 Utah 207, 167 P. 256, the evidence was directed almost entirely to the testator's sanity. There was no evidence of undue influence. The beneficiaries under his will did not know he had any property and were astonished when they learned they were his sole beneficiaries. They had befriended him during his life lived largely in recluse.

In *Re Sproston's Estate*, Cal. App., 39 P. 2d 266, affirmed 4 Cal. 2d 717, 52 P. 2d 924, the decedent had never seen his son, born after he left home, and never communicated with him and did not even know that he was alive. Those to whom he left his property were close friends. The court said (page 268) :

"The presumption of undue influence is not raised by proof of interest and opportunity alone. * * * In order to set aside a will for undue influence, there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made."

In the case at bar there was some evidence from which such pressure and such overpowering could be inferred.

In *Re De Soberanes' Estate*, 182 Cal. 525, 189 P. 103, the court's conclusion that there was no undue influence was confirmed. So in this case a conclusion the other way could be supported. Likewise, in *Re Bryson's Estate*, 191 Cal. 521, 217 P. 525, the judgment of the lower court concluding that there was not undue influence was affirmed.

In Sickles Case, 63 N. J. Eq. 233, 50 A. 577, it was held that where "a widower, 81 years old and bed-ridden with paralysis, having five children, made a will leaving to one son and his wife, who lived with him, nearly all his property

for their lives,—influenced to do so by the threat of this son that otherwise he and his wife would leave the testator. Held, the will was a product of undue influence." This and the instant case are very similar in their facts, except that in the Sickles Case the testator was bed-ridden and far more in a helpless condition than the testatrix in this case. But if there is evidence from which the court might infer that although not helpless she was kept insulated from help by the others because of C. A. Goldsberry's conduct, she was somewhat in the same position as the testator in the Sickles Case.

The judgment of the trial court is reversed with instructions to sustain the demurrer to the contest (reply) and to permit such proceedings as in law may be taken in the premises. Appellant is to obtain costs except for the transcript of the evidence and twenty pages of the abstract.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.