282 P.2d 335

Doyle LAWRENCE, an infant, by Jesse Lawrence, his Guardian ad litem, Plaintiff and Appellant,

v.

BAMBERGER RAILROAD COMPANY, a corporation, Defendant and Respondent.

No. 8244.

Supreme Court of Utah.

April 4, 1955.

Forrest W. Fuller, Gordon I. Hyde, Salt Lake City, for appellant.

Skeen, Thurman, Worsley & Snow, H. G. Christensen, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff, a sixteen year old boy, was struck and severely injured by defendant's train as he stood upon its crossing at 8th North and 3rd West Streets in Salt Lake City, Utah. Upon issue joined as to defendant's negligence, and plaintiff's contributory negligence, trial was had to the court. It found no negligence on the part of defendant, nor contributory negligence by plaintiff, and dismissed the action. Plaintiff appeals, and defendant cross appeals, each challenging the finding adverse to such party.

Plaintiff urges that because the motion to dismiss was granted at the conclusion of his evidence, such ruling was equivalent to a non-suit and consequently he is entitled to have us review the evidence in the most favorable light to him. This was true in our former practice under Sec. 104–29–1(5) U.C.A.1943 which made no provi-

sion for finding of facts by the court. In fact under it this court said that after granting a non-suit, no facts may be found by the court.[1] This would still be true in a jury case, where the function of the court would be to rule as a matter of law, whether there was sufficient evidence to make a jury question.[2] Under our new rule, 41(b) U.R. C.P., where the trial is to the court, the situation is different. It provides:

"After the plaintiff has completed the presentation of his evidence, the defendant, * * * may move for a dismissal on the ground that * * * the plaintiff has shown no right to relief. *In an action tried by the court * * * the court as trier of the facts may then determine them * * *.* If the court renders judgment on the merits against the plaintiff, the court shall make findings * * *." (Emphasis added.)

The emphasized portion of this rule was not in the former statute, nor in the original Federal Rules of Civil Procedure, rule 41 (b). It was included by amendment in 1946 to clarify the rule in conformity with the position taken by the Sixth, Seventh and Ninth Circuits in permitting the trial court to retain his role as trier of the facts.

Moore says: "The amendment clearly adopts the better practice. * * * It is entirely appropriate that the court have the power to weigh the evidence, consider the law, and find for the defendant at the close of the plaintiff's case."[3] He goes on to indicate that it will not always be advisable for the court to do so; that especially in close cases it may be desirable to put the defendant to his proof, and then decide the case when all of the evidence has been adduced. The rule clearly indicates that the motion may raise issues of fact as well as law. That is, where the trial is to the court, the motion does not request the judge to take the case from himself as factfinder but permits him to retain that role, and as stated in the rule, "the court as trier of the facts may determine them and * * * make findings * * *."

When the court has made findings and entered judgment thereon as was done here, it is then our duty to review the evidence in the light most favorable to the findings, and they must be allowed to stand if reasonable minds could agree with them.[4] Likewise every reasonable intendment ought to be indulged in favor of the validity and correctness of the judgment under review.

1. Tintic Standard Mining Co. v. Utah County, 80 Utah 491, 15 P.2d 633, 640.

2. Martin v. Stevens, Utah, 243 P.2d 747, 748.

3. 5 Moore's Federal Practice 1045; See pp. 1043 et seq. for discussion of Rule 41 (b) and 1946 amendment showing court may be "trier of facts" and make findings in response to such motion.

4. See Born v. La Fayette Auto Co., 196 Ind. 399, 145 N.E. 833, 41 A.L.R. 952; Gottwals v. Rencher, 60 Nev. 35, 92 P.2d 1000, 98 P.2d 481, 126 A.L.R. 1262; In re Goldsberry's Estate, 95 Utah 379, 81 P.2d 1106, 1111, 117 A.L.R. 1444.

251 at top right corner

and it will not be disturbed unless the appellant meets his burden of affirmatively showing error.[5]

We confront the question whether the court as fact-finder could reasonably remain unconvinced that the plaintiff had proved by a preponderance of the evidence that defendant was guilty of negligence which proximately caused plaintiff's injury. Or, to state the converse thereof, was the evidence such that all reasonable minds would conclude that the plaintiff had established by a preponderance of the evidence that defendant was negligent and that it approximately caused plaintiff's injury. If the foregoing propositions are resolved against the plaintiff, his appeal must fail.

The crew of defendant's electric train first saw plaintiff on the crossing as the train proceeded southward rounding a curve some 150 yards to the north. The motorman shut off the power, made a light application of air to the brakes, began to sound blasts of the air whistle and ring the warning bell as plaintiff walked westward over the double tracks. When the train was about 100 yards from the point of impact, plaintiff turned around, walked back upon the tracks and faced the oncoming train "shifting or dancing from one foot to the other" as the train continued slowly forward. In spite of the advancing train and the signals which were being given, plaintiff made no move to get out of the way. The bell continued to ring, the air horn to sound in short blasts and the motorman leaned out of the cab window shouting and waving his arm at plaintiff in an effort to warn him off the tracks. At the time the train was about 50 yards from the plaintiff, the motorman threw the brakes into emergency and made the quickest possible stop. This was not soon enough. The engine struck the boy and continued on another 50 or 60 feet. Plaintiff's leg was caught and mangled so badly that amputation was necessary.

After the accident it was discovered that the plaintiff had a mental illness diagnosed as schizophrenia, and also was afflicted to some degree with muscular dystrophy. The psychiatrist who examined him testified that in his opinion the boy had in all probability been guided by an insane delusion that a voice told him to get on the tracks as a test of his faith in God and that the boy had obeyed this prompting, apparently believing that no harm would befall him, when this tragic accident occurred.

██ We share the sympathy of all concerned for this unfortunate boy. And we are not in disagreement with the proposition suggested by plaintiff that "one having an opportunity by the exercise of proper care to avoid injuring another must do so notwithstanding the latter has placed himself in a situation of danger by his own negligence" [6] if such rule is applied under proper

5. McCollum v. Clothier, Utah, 241 P.2d 468, 469; 3 Am.Jur., Appeal and Error, § 953.

6. Lee v. Market St. Ry. Co., 135 Cal. 293, 295, 67 P. 765.

circumstances. But it is subject to limitations which prevent plaintiff from recovering under the facts here presented.

■■ The motorman or engineer operating a train may assume, and act in reliance on the assumption, that a person on or approaching a crossing is in possession of his natural faculties and aware of the situation, including the fact that a train is a large and cumbersome instrumentality which is difficult to stop, and that the person will exercise ordinary care and take reasonable precautions for his own safety.[7] If, consistent with his duty of due care, anything appears so that he either knows or should know that there is a likelihood of danger to a person near the tracks, it becomes his duty to use all reasonable efforts to give warnings, to slacken his speed, and if possible, to stop in time to avert an accident.[8] The duty is measured by the exigencies of the occasion. For instance, danger would be more readily apprehended if the person on or near the tracks were a small child, or some one possessing an obvious limitation or disability.[9]

■ The only thing unusual to be observed about the plaintiff was that he persisted in remaining on the tracks as the train approached. The fact that his ailments were of such a nature as not to be readily discernible to the crew as they approached the crossing militates against the plaintiff's argument that they should have realized at an earlier instant that something was wrong with him and that he was not going to get off the tracks. It is well known that youngsters sometimes engage in pranks. Mr. Skeen, defendant's trolley man, testified that when plaintiff stood on the track at 100 yards it was not "startling or unusual." It doesn't seem entirely unreasonable for the crew to have believed momentarily that the plaintiff would heed the signals and move or jump off the track before the train actually hit him. Even so, the motorman made a partial application of the air brakes, and the warning signals above described were commenced. At 50 yards the motorman realized that there was a likelihood that the plaintiff might not attempt to move. At that time he did make every possible effort to come to an emergency stop. It is indeed possible that if the motorman had been a person of unusual perspicacity he might have guessed that something was wrong at an earlier instant. But even though extraordinary skill, caution and foresight are to be admired, the law does not demand such standard of conduct.[10] The test is to be applied on the basis of foresight and not of hindsight. That is, as the picture appeared

7. 74 C.J.S., Railroads, § 751(b).

8. 44 Am.Jur., Railroads, § 509.

9. For a Utah case recognizing this distinction see Palmer v. Oregon Short Line R. Co., 34 Utah 466, 98 P. 689.

10. Prosser, Torts, Section 36.

to the motorman at the time, did his conduct meet the standard of care for the ordinary, reasonable and prudent person under the circumstances, which includes his skill and experience as a motorman. The trial court has found that it did. We do not believe that the actions disclosed by the evidence are so far outside the standard of due care that reasonable minds could not so conclude.

■ Error is also assigned for failure to admit testimony on another theory of negligence to the effect that the train was overloaded, thus preventing the motorman from being able to stop the train in time. There are two reasons why the trial court was correct in refusing admission of such evidence: (1) That issue was not set up as an issue of fact in the pleadings, at the pre-trial or in the pre-trial order. It may be that this could have been remedied during the trial but such was not done. (2) No proper foundation was laid for the admission of the proffered testimony.

The cross appeal assails the trial court's finding that the plaintiff was not guilty of contributory negligence "since his mental illness rendered it impossible for him to exercise due care for his own safety." We do not question the rule upon which the trial court based its determination that a plaintiff will not be held guilty of contributory negligence if he was unable to appreciate the danger.[11] However, in view of the fact that this cause is effectively disposed of by reason of our affirmance of the finding of the trial court that the defendant was not negligent, it is unnecessary for us to review the contentions of the parties as to whether the plaintiff was able to comprehend the danger he confronted under the facts here.

Affirmed. Costs to respondent.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN, J., concurs in the result.

HENRIOD, Justice (concurring in part and dissenting in part).

I concur except as to that portion of the main opinion having to do with Rule 41(b). I have no quarrel with the rule itself, but I do not believe that because it permits the trial judge to find the facts on motion for dismissal at the end of plaintiff's case, that it imposes on this court any obligation to review the evidence any differently than we did where formerly a motion to dismiss was granted, i. e., in a light most favorable to plaintiff. To construe the rule as has the main opinion would lead to a situation where two cases factually identical could be determined differently if one were tried to the court and the other to a jury. I do not believe the rules, which every one seems to say are for the purpose of doing justice, would contemplate such an unusual and actually unfair result.

11. Knox v. Snow, Utah, 229 P.2d 874; 65 C.J.S., Negligence, § 141.